# ALEXANDER WHITE

*v.*

# MARTIN O. WALKER.

1. EVIDENCE — *who shall determine its purpose.* It is not proper for the court to instruct a jury for what special and exclusive purpose certain evidence was introduced upon the trial of a cause, when it could be legitimately applied to another and different purpose.

2. So, in an action against a guarantor upon a lease, one of the defenses interposed being an alleged new agreement entered into between the lessor and lessee, by parol, whereby less rent was reserved, which, it was alleged, had been paid, it was competent for the defendant to prove that by reason of raising the grade of the street in front of the premises, they had become untenantable or less convenient, for the purpose for which they were leased, by way of showing to the jury, perhaps, that to have been one of the inducements for the lessor to make a new contract; and the court had no right to exclude such evidence, and to tell the jury it was offered for the sole purpose of avoiding the payment of full rent under the lease and guaranty.

3. SEALED INSTRUMENTS — *of their discharge, whether by parol or under seal.* It was an old maxim of the common law that an obligor could only be released, by an instrument of as high dignity as that by which he was bound — being obligated by a seal, he could be released only by an instrument under seal.

4. Technically, this may be the rule of modern times, but practically, it is not enforced.

5. It is of frequent occurrence that in an action of debt on a bond, or other sealed instrument, the defendant under his plea of payment, proves by parol, the actual receipt by the obligee, of the money due on the bond, and which would operate as a release and discharge of the bond.

6. So with a debt secured by mortgage, a release of such debt need not be under seal. *Ryan* v. *Dunlap et al.*, 17 Ill. 40.

7. And it may be that in every case, where parties are bound to one another by writing under seal, the obligors will be discharged by parol proof of facts, if sufficient in themselves to constitute a discharge. And this, more especially, in cases where some one or more of the parties are sureties only.

8. In all contracts for chattel interests, evidenced by sealed instruments, performance *in pais* will, generally, discharge all the parties to it.

9. So in a lease for rent at a stipulated sum, and guaranteed, as in this case, a new parol agreement with the lessee, will discharge him.

10. CONSIDERATION — *what is sufficient.* Where a person leased premises to be used as a boarding house, and by reason of occurrences subsequent to

White *v.* Walker.

the leasing, a right to sue the lessor for damages occasioned thereby, for loss of business or otherwise, has arisen, such right of action would be waived by a new agreement between the lessor and lessee in regard to such leasing; and this would be a sufficient consideration for the new agreement.

11. Remaining in the house was a detriment to the lessee, under the circumstances, and this would be a good consideration for a new agreement between him and his lessor.

12. Where, after the death of the lessee, the lessor made a new agreement with the widow of the lessee, upon whom no obligation rested, as the widow, to continue in possession, and at a less rent than was originally reserved; it being of interest to the lessor that the premises should be occupied, and the condition of the premises having become such, after the original leasing, that it would likely be difficult to procure a tenant, would constitute a sufficient consideration for this new agreement.

13. The question in such case is not, what was the amount of consideration for the new agreement, but, was there any consideration at all.

14. EQUITABLE ESTOPPEL — *when it applies.* But if there were no consideration for the new agreements between the lessor and his lessee, and with the widow of the lessee, still, they having been executed, and the guarantor on the original lease having thereby been led into a line of conduct which must be prejudicial to his interests, by the admissions of the lessor, as in declining an indemnity from the lessee, an equitable estoppel arises which will prevent a recovery against the guarantor.

15. The rule seems to be, that a promise to forgive a debt, or to forbear its collection, if either temporarily, or for an indefinite period, unsupported by any consideration, though ineffectual as a defense, viewed merely as an agreement, yet if the surety has been induced by such an assurance, to neglect any of the means which might have been used for his indemnity, the promise may have that effect as an estoppel, which it wants as a contract, and amount to a defense against any subsequent action brought by the creditor.

16. GUARANTOR — *released by a new agreement.* If a lessor of premises make a new leasing thereof to the same or another lessee, during the term of a prior lease, a guarantor upon the original lease would become thereby discharged from his liability.

17. JURY — *what it shall determine.* Whether a new agreement between the lessor and lessee, regarding the terms of renting the premises, constitutes a waiver, or surrender of the original lease, and so intended by the parties, should be left to the jury.

18. GUARANTOR — NOTICE. Where a guarantor upon a lease is liable secondarily, only, depending upon the default of the lessee, and the fact of non-payment resting entirely within the knowledge of the lessor, it would seem but reasonable the guarantor should have notice of the default, before the commencement of a suit against him, so that he might pay what was due, without suit, or procure indemnity.

19. INTEREST — *when recoverable.* Interest is recoverable as damages only, except when provided for in the bond or agreement. No damages could result to a party consenting to a postponement of payment, so no interest would be recoverable by the consenting party.

20. Although a lessee is bound to pay interest on installments of rent, from the time they become due, when nothing has been done by the lessor to prevent the regular payment of the installments, yet where new agreements have been made, affecting the amount of the rents and the time of payment, even if such new agreements are not valid and binding, for the want of a consideration, the lessor ought not to demand interest, certainly not without a demand for the money, and then interest from the time of the demand.

APPEAL from the Superior Court of Chicago.

On the 11th of April, 1857, Martin O. Walker, the appellee, executed a lease, under seal, for certain premises in the city of Chicago, for a term of two years, to William J. Napier, at a certain rent stipulated in the lease.

Alexander White indorsed upon the lease his guaranty for the payment of the rent at the time it should become due.

Walker instituted an action of assumpsit in the court below, against White, the guarantor, alleging the non-payment of the rent. The pleadings and proof in the cause, and the various rulings upon the trial below, are sufficiently set forth in the opinion of the court.

Messrs. BARKER & TULEY, for the appellant.

The making of a new lease to the lessee during the term of the former lease, operated as a surrender, and discharged the guarantor. 38 Law & Eq. R. 472; 2 Platt on Leases, 506; Woodfall's Land. and Ten. 253, and cases cited; 1 A. & E. 136, (28 E. C. L. 85); 4 Barn. & Cres. 922, 938; 5 ib. 111; and this independently of the intention of the parties; 13 Mees. & Wels. 285, 302, 306; and though the second lease be by parol; *Thomas* v. *Cook,* 2 Starkie, 409; 3 E. Com. Law R. 466. The landlord cannot grant a new lease until the old lease is surrendered. Woodfall's Land. and Ten. 253.

2. The new leasing to the widow of the lessee determined the estate under the former lease.

The widow, as such, had no right to retain the possession; the residue of the term, after the death of the lessee, vested in the personal representatives. 2 Platt on Leases, 372.

The leasing to the widow released the personal representatives of the lessee from liability for rent accruing after that time. *Thomas* v. *Cook*, 2 B. & Ald. 119, (4 E. C. L. 428).

If the lessor allows another to occupy so that he who has a right, cannot get possession, it is a surrender by operation of law. 2 Car. & P. 268, (12 E. C. L. 565).

3. It was for the jury to determine, from the facts, whether or not Walker accepted a new tenant, and the court erred in excluding testimony to that point from the jury, and in not giving the second instruction asked for by defendant below. *Woodcock* v. *Nutte*, 21 E. C. L. 259, (8 Bingham, 170); *Jones* v. *Bird*, 7 E. C. L. 280; 5 B. & Ald. 850, (4 E. C. L. 428).

4. That the court erred in the first instruction of plaintiff below; that the jury should disregard all evidence in the cause tending to show a discharge of the covenants; that any proof thereof must be in writing, and under the seal of the party. The lease, though under seal, might be discharged by parol. *Parker* v. *Pratt*, 15 Ill. 568; *Peel* v. *Totlock*, 1 Bos. & Pull. 419.

Messrs. McAllister, Jewett & Jackson, for the appellee.

The court below properly excluded evidence tending to show that the premises had become untenantable by reason of the raising of the street to grade, subsequent to the making of the lease. There being no particular agreement to put or keep the premises in repair, the tenant took them for better or for worse, and the lessor was under no obligation to repair. *Cleves* v. *Willoughby*, 7 Hill, 90; *Munsford* v. *Brown*, 6 Cowan, 475; Corwyn's Land. and Tenant, 185; Taylor's Land. and Tenant, secs. 327, 328; *Westlake* v. *DeGraw*, 25 Wend. 669.

The evidence of the subsequent leasing was properly excluded; the terms of a lease under seal cannot be varied by parol. *Chapman* v. *McGrew*, 20 Ill. 100.

27

The second instruction for the plaintiff is sustained by the case of *Walker* v. *Hadduck*, 14 Ill. 399.

The acceptance, merely, by the landlord, of a new tenant, does not annul the lease to a former occupant. It may be, however, if it is so agreed by the parties; but no new agreement between a landlord and tenant, for the substitution of another tenant, *or any other act of a landlord which can be referred to a different motive*, will amount to a surrender. Taylor's Landlord and Tenant, sec. 516.

The agreement to substitute must be mutual, otherwise the tenant will not be discharged from his liability. Ib., sec. 517.

Mr. MELVILLE W. FULLER, for the appellant, in reply.

1. Whether the agreement by Walker with Napier, to take less rent than had been reserved, be considered as operating upon the old lease, or as constituting a new one, the court erred in excluding the evidence thereof, and in giving plaintiff's first and third instructions.

If a new leasing, it was a complete defense. *Taylor* v. *Hilary*, 1 C. M. & R. 741; *Bethune* v. *Dozier*, 10 Georgia, 235, and cases cited.

If an agreement merely changing the terms of the old lease as to the amount of rent to be paid monthly thereon, proof of it was clearly admissible.

The evidence was excluded on two grounds:

(*a*) That a parol agreement can *never* be shown *at law* in defense to a sealed instrument.

(*b*) That the alleged new agreement was without consideration.

(*a*) But the new agreement in this case was fully *executed*, and an *executed* parol agreement can always be shown *at law* to defeat a recovery on an instrument under seal.

This is because it is not the agreement alone, but the *thing done under it*, that is relied on. *Dickinson* v. *Commissioners, etc.*, 6 Porter (Ind.) 128. The opinion in this case discusses and distinguishes all the leading authorities. *Carpenter* v. *King*, 9 Metcalf, 511.

And it has been held in this State, that defenses of similar character may be made *at law,* as well as equity. *Flynn* v. *Mudd,* 27 Ill. 323; *Davis* v. *People,* 1 Gilm. 409.

*Chapman* v. *McGrew,* 20 Ill. 101, is clearly distinguishable, because there the agreement was *executory,* which is the precise point on which all the cases turn, and because the security in that case was a *co-contractor.*

(*b*) Was there consideration?

Benefit to one party, or detriment to the other; the waiver of any legal or equitable right; the giving up a suit when the result is doubtful; the compromise of a doubtful claim, no matter where the right actually turns out to be; either of these forms sufficient consideration. 1 Parsons' Cont. 357, 364, 369; *McKinley* v. *Watkins,* 13 Ill. 140.

In consideration of Walker's agreement, Napier waived certain legal or equitable rights he had in the premises, arising from the breach of the implied covenant for quiet enjoyment, and the destruction of the use of the premises for the purpose for which they were leased.

The covenant for quiet enjoyment is implied under the word "demise." Woodfall's Land. and Ten., p. 98. Which is broken by any description of annoyance which prevents the enjoyment of the property in *so ample a manner* as contracted for. Ib. 514.

It would seem that a *public invasion* of the enjoyment is a breach. GIBSON, C. J., 2 Jones (Pa.) 80; *Peters* v. *Grubb,* 9 Harris, 455.

The rent ought to be abated where the beneficial use is destroyed. *Brown* v. *Morris,* 2 Bro. Ch. Ca. 311; 8 Bac. Abr., tit. Rent; Gilbert on Rents, 147, 148.

It is an implied condition that house should be fit for habitation, and tenant can quit, without notice, when house is so infested with bugs as to be untenantable, or its walls are so dilapidated as to be dangerous, or the drainage is so insufficient as to fill it with an intolerable stench. *Smith* v. *Marrable,* 11 M. & W. 5; *Edwards* v. *Ethrington,* Ry. & M. 268; *Collins* v. *Barrow,* 1 Mo. & Rob. 112.

And though the rule may be now considered more rigid as

against the tenant, yet we contend that such is still the law where the leasing is *for a particular purpose*, as in this case.

At all events, Napier compromised what was a *reasonable claim*, and it is immaterial how the right might have been eventually determined. *McKinley* v. *Watkins*, 13 Ill. 140, and cases cited.

*Mutual promises*, however, need no extrinsic consideration. 1 Smith's Leading Cases, 465, and cases cited.

And, upon this ground, if no other, the agreement was binding.

(*c*) Thus much as between Walker and Napier, for as between White and Walker, the principle of *equitable estoppel* settles the question. 1 Smith's Leading Cases, 466; 2 Amer. L. C. 175; *Carpenter* v. *King*, 9 Met. 511.

White was offered security by the Napiers, which he declined to take, because he relied on Walker's agreement.

2. The parol agreement was a waiver of performance of the covenants of the lease; and a waiver of performance of a contract by one party may always be given in evidence by the other, in answer to an action brought for its non-fulfillment. 1 Smith's Lead. Cas. 463, and cases.

3. The evidence was also admissible to defeat the recovery of interest. See *post*.

2. The court erred in refusing to allow the defendant to prove the value and condition of, and the facts in reference to, the furniture offered to White as security.

The court, by this ruling, cut the defendant off from proving the estoppel which rendered the agreement in question valid by supplying the want of consideration (if it lacked that element of validity), and then shut the agreement out, on the ground that it was without consideration!

3. The court erred in giving plaintiff's second instruction.

Interest, except when provided for in the instrument, is given as damages for delay in payment.

*Consent* is incompatible with injury, and no one who *causes* or *sanctions* the breach of an agreement can recover damages for *its non-fulfillment*. 1 Smith's Leading Cases, 463.

The non-payment of the full amount of the installments of rent, as they matured, was by *consent*.

4. .The declaration should have averred, and the proof shown, notice to White, the guarantor, of Napier's default. *Cox* v. *Brown*, 6 Jones (Law) N. C. 101, and cases cited; *Lewis* v. *Bradley*, 2 Ired. R. 303, and cases cited.

5. The agreement with Mrs. Napier, after her husband's death, at $50 per month, was clearly a new leasing and a surrender of the old one. At least this was a question for the jury, and erroneously taken from them by the court, which also erred in refusing to give defendant's second instruction. *Doe ex dem. Lord* v. *Crego*, 60 Eng. C. L. R. (6 M. G. & S.), 89, is decisive of this question.

Mr. JUSTICE BREESE delivered the opinion of the Court.

This was an action of assumpsit brought by the appellee against the appellant in the Superior Court of Chicago, on the following guarantee: "I hereby guarantee the payment of the rent to become due on the within lease on the days the same becomes due. Chicago, April 13, 1857." This writing of guarantee was indorsed on the lease, which bore date, April 11, 1857.

The defendant pleaded the general issue, with notice of a special defense, arising under the statute of frauds and perjuries, which it is not necessary further to notice; also, want of consideration, payment, and the following facts:

That after the making of said lease, and sometime in the fall of the year 1857, or before that time, the street in the city of Chicago, adjoining the said demised premises, was, by said plaintiff, or by his, said plaintiff's, consent, raised to grade; that is to say, the said street was raised by adding and putting on of earth and stones several feet above the height and condition it was in when said premises were leased by plaintiff to said Napier as in said declaration mentioned; whereby and by means whereof, a nuisance was created by the water, dirt and filth which flowed in and upon the basement story of the house, situated upon said premises, at all times; and oftentimes covering the basement floor of said house with several inches of water, by reason of which nuisance, caused by the con-

duct of said plaintiff, the said premises became untenantable, and the continued occupation of said premises, by reason of the flowing in of said water, dirt and filth upon such premises caused by the raising of said street, became and was at great risk and danger to the health and comfort of said lessee, said Napier and his family, and produced an eviction of said lessee by said plaintiff which would have justified said lessee in vacating said premises; and that at and about that time, to wit, on or about the 1st day of December, A. D. 1857, the said plaintiff did agree to and with said Napier, lessee, in consideration of the foregoing facts, and in consideration that said lessee was deprived of the beneficial enjoyment of said premises, by reason of the raising of said street to grade, as aforesaid, and in consideration and because the said lessee had for some months previous thereto lost his boarders, (the said house having been rented for and used as a boarding house), because of the said nuisance, and because of the failure of said plaintiff to do certain repairs, and make certain drains, which he, plaintiff, agreed before that time with said lessee to do and make; and for other good and sufficient considerations, that he, the said plaintiff, would, from and after that time, to wit, the making of said agreement, reduce said rent for said premises to eighty dollars per month, and would from that time, and for the remainder of said term, accept and receive of and from said lessee the sum of eighty dollars per month, as and for full satisfaction and payment of the rent of said premises; and that this defendant should not after that time be liable for, or called upon to pay any additional rent to said eighty dollars per month, so agreed to be paid by said lessee, and agreed to be accepted by said plaintiff, as aforesaid, and that at the time of the making of the said last mentioned agreement, as to said eighty dollars per month, between said plaintiff and said lessee, all the rent before that time, due and payable on said lease, had been paid by said lessee to said plaintiff, and that the said lessee did, from and after the making of said agreement as to eighty dollars per month, and until his, said lessee's, decease, (which occurred some time in the spring or summer of the year

1858,) pay to said plaintiff, and said plaintiff did receive of and from said lessee, the sum and rate of eighty dollars per month as and for full satisfaction and payment of all rent becoming due on said premises during said time, to wit, from the making of said agreement to the decease of said lessee, and that after the decease of said lessee, the widow of said lessee, not being administratrix or executrix of said lessee, or having any right or authority to take possession of or control of the estate of the leasehold interest of said lessee in said premises, which facts, and also the fact of said decease, were well known to said plaintiff, did take possession of and occupy said premises with the consent and permission of said plaintiff; and did, from and after the decease of her said husband, and until the 1st day of August, 1858, pay to said plaintiff, and said plaintiff did accept from said Mrs. Napier, widow, the sum of eighty dollars per month as rent of said premises ; and that on or about the said 1st day of August, the said premises having become still more untenantable and unbeneficial by reason of said nuisance, and in consideration thereof, and for other good and sufficient considerations, the said plaintiff did agree, to and with the said Mrs. Napier, widow, to accept and receive from her, the said Mrs. Napier, the sum of fifty dollars per month from said 1st day of August, until the expiration of the term in said lease mentioned, as rent for said premises, and said Mrs. Napier did pay to, and said plaintiff did receive from her, the sum of fifty dollars per month for each and every month from said 1st day of August, until the expiration of said term in said lease mentioned, as and for and in full of the rent of said premises for said time.   That from and after the decease of said lessee, and until the expiration of the said lease in said declaration mentioned, said premises were worth, and of the value not to exceed fifty dollars per month of said time, which sum or rate of fifty dollars has been fully paid to said plaintiff.

The cause was tried on the general issue and notice, and the jury found " the issues " for the plaintiff, and assessed the damages at eight hundred and ·sixty-three dollars and

sixty-five cents. A motion for a new trial was entered, which was overruled and a bill of exceptions signed, containing all the evidence in the cause. The case is brought here by appeal, and the following errors are assigned and relied on, as grounds for the reversal of the judgment:

The court erred in sustaining each and all of the several motions of plaintiff below, to exclude from the consideration of the jury all the evidence given on the part of defendant — as to the untenantable condition of the leasehold premises — as to alleged agreement with William J. Napier, by plaintiff, for taking a less monthly rent than that described in the lease, and all the evidence of the alleged agreement between Mrs. Napier to the same effect, and also all evidence tending to show a surrender of the lease in question; in excluding said evidence, and each and every part thereof, from the jury.

That the court erred in giving the instructions by the court given on behalf of the plaintiff, and in giving each of them.

That the court erred in refusing to give the instructions asked by the defendant, and numbered 1, 2, and 3, and each of them.

That the court erred in overruling the motion for a new trial, made by the defendant below.

The instructions were as follows, for the plaintiff:

1. The jury in this cause will disregard all the evidence offered in this cause tending to show a discharge of the covenants to pay rent reserved in the lease offered in this cause, as it would be improper for them to consider any proof for that purpose unless such proof is in writing and under the seal of the party.

2. In this cause, the plaintiff will be entitled to interest on all rents not paid, from the time the same became due and remained unpaid, at six per cent. per annum.

3. All proof given in this cause, showing the condition of the said premises in consequence of the raising the grade of the street by the city of Chicago in front of the said

premises — offered for the purpose of avoiding the payment of full rent under the lease and guarantee in this suit — will be disregarded by the jury.

It appears from the record, that the principal controversy was upon the special facts stated in the fourth branch of the notice, and much testimony was produced on both sides, on the points presented by it.

Those facts were offered to show, that after the execution of the lease, the premises having been rented for a boarding house, by reason of certain improvements caused and carried on by the authority of the city, they became less habitable than they were when possession was taken under the lease, and that the business, to which the premises were devoted, could not be carried on successfully, or with convenience, or safety to health, on account that sufficient drainage, rendered necessary by those improvements, was not provided by the lessor. Under these circumstances, the defendant attempted to show, that in consideration of all these things, the parties to the lease, the lessor and lessee, made a new agreement, which in effect, superseded the original lease, and which new agreement had been fully performed by the lessee, whereby the defendant's liability, as guarantor, had been released and discharged.

After testimony had been fully heard tending to establish such a case, the court instructed the jury to disregard all the evidence offered tending to show a discharge of the covenants to pay the rent reserved in the lease, as it would be improper for them to consider any proof for that purpose, unless such proof was in writing, and under the seal of the party, and they were also instructed to disregard all the proof in the cause, showing the condition of the premises, in consequence of raising the grade of the street in front of the premises, which was offered for the purpose, as the court declared, of avoiding the payment of full rent under the lease and guarantee.

Why the court should undertake to say, for what special and exclusive purpose such proof was offered, we cannot discover, since, as we look at the case, it might have been offered

and received by the court, as showing facts calculated to operate upon the sense of justice of the lessor to make a new agreement at a reduced rate of rent. At any rate, it was competent evidence to go to the jury for such purpose, and to be used by the defendant, to bring the minds of the jury to that conclusion. It was not for the court to say for what special and exclusive purpose such evidence was introduced, if it could be' legitimately applied to another and different purpose. The court says it was offered for the sole purpose of avoiding the payment of full rent under the lease, when the defendant might properly insist it was for the purpose of showing, they were the inducements operating with the lessor, not to reduce the rent, but to make a new agreement about the rent, and it was a fair question for the jury. The jury might have come to the conclusion, that the facts in evidence and excluded, so operated upon the lessor, as to induce him to waive the sealed lease, and claim only under a new parol agreement. This brings us to the examination of the principal question in the cause as presented by the first instruction.

It was an old maxim of the common law, that an obligor could only be released by an instrument of as high dignity as that by which he was bound—being obligated by a seal, he could be released only by an instrument under seal. Technically, this may be the rule of modern times, but practically, it is not enforced. Of how frequent occurrence is it, that in an action of debt upon a bond or other sealed instrument, the defendant, under a plea of payment, proves by parol, the actual receipt by the obligee, of the money due on the bond, and which all courts hold to be a release and discharge of the bond. So with a debt secured by mortgage, a release of such debt need not be under seal. *Ryan* v. *Dunlap et al.*, 17 Ill. 40. We are not sure, but that in every conceivable case, where parties are bound to one another by writing under seal, the obligors will be discharged, by parol proof of facts, if sufficient in themselves to constitute a discharge. And this, more especially, in cases where some one or more of the parties are sureties only. Thus, where one holds a bond against two others, one of whom is a surety only,

and he informs the surety that his principal has paid and discharged the bond, or that he has made another and different arrangement with him, on which the surety may have acted, the surety will be discharged, on proof of such facts. In all contracts for chattel interests evidenced by sealed instruments, performance *in pais* will generally discharge all the parties to it. So in a lease for rent at a stipulated sum, and guaranteed, as in this case, who will question that parol proof of payment of the sum stipulated, will not discharge the guarantor? If proof of payment will discharge him, will not a new parol agreement with the lessee discharge him, especially if that agreement be fully executed? That is the question made here. The evidence excluded by the court tended to prove, that in the lifetime of the lessee, on his representations of the annoyances and discomforts occasioned by raising the grade of the street in front of the demised premises, the lessor did some act, or made some arrangement, which the defendant claimed was a new agreement about the rent, and with which the lessee had fully complied. Further, that on the death of the lessee, his widow, but not his personal representative, remaining in possession, a new agreement was made with her, and which has also been fully executed. The object of the proof was not to change the terms and conditions of the original lease, but to show that its stipulations and covenants had been waived by the lessor, and a new and different agreement entered into, by which the written agreement was superseded or discharged. The plaintiff insists, however, if a new agreement was made, it was not upon any sufficient consideration, and, therefore, had no binding force. The question is not, what was the amount of consideration for the new agreement, but, was there any consideration at all.

The proofs show, when the lessee complained to plaintiff, of the injuries resulting to him from the flow of water upon the premises, and other disturbances thereto, occasioned by the improvements of the street, he informed the plaintiff that he had taken legal advice that he was not obliged to stay on the premises, whereupon the new agreement was made, and a declaration made by plaintiff that defendant should not be held on his guarantee, and this was communicated to him.

The premises were leased for a boarding house, and if they became uninhabitable for such purpose, by reason of occurrences subsequent to the leasing, over which the lessee had no control, and which in some degree were instigated by the lessor, the tenant might have had the legal right to quit the premises. The doctrine of the cases of *Smith* v. *Marrable,* 11 Mees. & Wels. (Exch. R.) 5, and *Edwards* v. *Etherington,* 16 E. C. L. 271, would seem to go to this extent. It might amount to an eviction. *Halligan* v. *Wade,* 21 Ill. 470. If this is conceded, a right to sue for damages occasioned thereby, for loss of business or otherwise, would have arisen, and this was waived by the new agreement. This is a sufficient consideration. *McKinley* v. *Watkins,* 13 Ill. 140 ; 1 Parsons on Con. 356 to 369. Remaining in the house was a detriment under the circumstances, and this would be a good consideration for a new agreement.

Now, as regards the subsequent agreement with the widow. On the death of the lessee, the lease being a chattel, passed to his personal representatives, and no obligation rested upon the widow to continue in possession. It was of interest to the plaintiff that the premises should be occupied, and in the condition in which they were, he might have supposed it difficult to procure a tenant. In these consist a consideration. A new lease was made to her, at a less rent, which was paid, and accepted by the plaintiff, without any objection, from month to month, as stipulated. Whether these facts constituted a waiver or surrender of the original lease, and so intended by the parties, should, at least, have been left to the jury. In this view, the second instruction of defendant should have been given. If they did, then the defendant was discharged of his guaranty unquestionably. If, in ordinary cases, giving time for a single day for a valuable consideration, will discharge a surety, though he is not in the least degree damnified thereby, *a fortiori* should he be discharged in this case, since, by means of these new agreements, the defendant has waived a security he might have had, by a chattel mortgage upon two thousand dollars worth of furniture, which was offered him by Mrs. Napier. Here is a new agreement executed in

full, and in this, the case is distinguishable from that of *Chapman* v. *McGrew*, 20 Ill. 101. In that case McGrew was not only a surety, but a contractor with Selby, and the contract was unexecuted.

But if there was no consideration for the new agreement, still if it has been executed, and by means thereof the defendant has been led into a line of conduct which must be prejudicial to his interests, by the admissions of the plaintiff, an equitable estoppel arises, which will prevent a recovery by the plaintiff.

The testimony shows that defendant was present when the last agreement was made to pay fifty dollars per month rent, and that he was satisfied with it, and on that account declined taking a chattel mortgage offered him by Mrs. Napier, on the furniture, after the plaintiff had refused it. Defendant had a right to rely on this agreement of plaintiff, made by his only authorized agent, and by it was induced to decline a security tendered him. The rule, we believe, is, that a promise to forgive a debt, or to forbear its collection, if either temporarily, or for an indefinite period, unsupported by any consideration, though ineffectual as a defense, viewed merely as an agreement, yet if the surety has been induced by such an assurance, to neglect any of the means which might have been used for his indemnity, the promise may have that effect as an estoppel, which it wants as a contract, and amount to a defense against any subsequent action brought by the creditor. *Harris* v. *Brooks*, 21 Pick. 195; and see the notes and comments on this case in 2 American Leading Cases, 175. The proof offered brings this case fully within this rule.

It is urged by the appellant, that being sued as a guarantor only, he was entitled to notice of the default of the lessee before suit brought; and the case of *Cox* v. *Brown*, 6 Jones (Law) N. C. 100, and *Lewis* v. *Bradley*, 2 Iredell, 303, are relied on as authority. This seems to be the rule in that State, and it is in the last named case said, that the rule of law appears to be, that wherever the circumstance which is alleged as the foundation of the defendant's liability, is more properly within the knowledge and privity of the plaintiff,

than the defendant, then notice thereof should be averred in the declaration and proved on the trial. Reference is made to *Heming's case*, Cro. James, 432, 2 Saunders, 62 ; *Rex* v. *Holland*, 5 T. R. 62 ; *Spooner* v. *Baxter*, 16 Pick. 409. Here the fact of non-payment rested entirely with the plaintiff The defendant was liable secondarily, only, as appears by the declaration, depending on the default of another ; it would seem then but reasonable, that he should have notice of the default, so that he might pay what was due, without being harassed by a suit, or procure indemnity.

Another objection made by appellant is, that the court allowed interest on the payments past due. In *Walker* v. *Hadduck*, 14 Ill. 399, this court held, that a lessee was bound to pay interest on installments of rent, from the time they became due. In that case, nothing had been done by the lessor, to prevent the regular payment of the installments, but it is insisted, that in this case the postponement was by consent of the lessor, and as interest is recoverable as damages only, except when provided for in the bond, or agreement, no damages could result to a consenting party, and such is the general rule of law. Even admitting that these new agreements were not valid and binding, they, at least, sanctioned the breach of the covenant, as by them, the lessors consented to accept less than the installments provided for in the lease. The guarantor relied upon this arrangement, and the plaintiff, therefore, ought not to be permitted now to demand interest, certainly not without a demand for the money, and then interest from the time of the demand.

The instructions for the plaintiff, in the view we have taken of this case, should not have been given.

Two instructions asked by the defendant, should have been given. They are as follows :

" It is for the jury to determine whether the plaintiff accepted Mrs. Napier as his tenant, and if they believe, from the evidence, that such was the fact, the plaintiff cannot recover for any of the rent on the original lease after the commencement of such new tenancy.

" If the jury believe, from the evidence, that W. J. Napier,

from November, 1857, to the time of his death, and his widow after his decease, to May, 1859, occupied the premises in question at a different rate of rent, and under a different agreement from that specified in the lease in question, then the jury may infer a new leasing of said premises, and the defendant is thereby discharged upon his guaranty, and he is entitled to a verdict in his favor."

These instructions follow as a corollary to the propositions we have advanced. It was a fit subject for the jury to determine, whether there was, or not, a surrender of the old lease, and the creation of a new tenancy.

The court gave an instruction for the defendant in the following words: "If the jury believe, from the evidence, that the time of payment of the rent, or any portion of the rent, was extended by a valid agreement, founded upon a valuable consideration, between Walker and Napier, such agreement would discharge the defendant from all liability upon his guarantee from the time of making such agreement."

This instruction was of no avail to the defendant, for the reason that the court, by the first instruction for the plaintiff, virtually excluded· from the jury all evidence of any agreement.

The judgment is reversed, and the cause remanded.

*Judgment reversed.*