WALLACE CARLSON, d/b/a Carlson Construction Company, Plaintiff-Appellee, *v.* ARCHIE D. CREMEENS *et al.*, Defendants-Appellants.

Fourth District   No. 13159

Opinion filed June 13, 1977.—Rehearing denied July 14, 1977.

Rosenberg, Rosenberg, Bickes & Johnson, Chartered, of Decatur (Wayne L. Bickes, of counsel), for appellants.

Marshall A. Susler, of Owen, Roberts, Susler & Taylor, of Decatur, for appellee.

Mr. JUSTICE TRAPP delivered the opinion of the court:

Defendants appeal a judgment in the sum of $8500 entered upon a jury verdict in plaintiff's action for damages alleged to have been incurred by reason of a breach of contract.

In June 1971 the parties entered into an option contract whereby plaintiff was to purchase a parcel of real estate. The face of the contract shows that it was drafted by plaintiff's out of state counsel. The cause of action arises in the following provision of the contract:

> "9. WATER AND SEWER. First Parties [defendants] shall, at their own cost and expense furnish an eight inch water line and an eight inch sewer line to the west property line of the land and premises here described as said west premises abut upon North Monroe Street. Such water and sewer line shall be installed and completed by the time of closing and each such line shall be approved by any and all governmental authorities having jurisdiction thereof."

The real estate concerned is generally shaped as a reversed "L" with a short dimension fronting on Monroe Street. Defendants had previously constructed an eight-inch water line across Monroe Street at a point approximately 150. feet north of the north boundary of plaintiff's land fronting on Monroe Street. In performing the contract, defendants extended the proposed eight-inch water main as a six-inch water line southward along the east line of Monroe Street to a point where such extended water line entered plaintiff's property on its north line as such north line of the frontage intercepted the east side of Monroe Street. The evidence is that the construction of the extended water line as a six-inch main in lieu of the eight-inch main was suggested and approved by the municipal authorities as to size and manner of installation.

Defendants' construction of the six-inch line was recorded upon a plat "as built" and filed with the city before September 9, 1971. Plaintiff's "site plan" showing the six-inch main as constructed was approved by the city in October 1971. The closing of the sale of the real estate between the parties was completed on or before November 10.

On March 21, 1972, plaintiff demanded that defendants construct an eight-inch water main "as shown on the attached sketch." Such sketch is not attached to the letter exhibit, but examination of the full record discloses that plaintiff demanded that defendants construct an eight-inch main from a principal city water main across Monroe Street to the westerly boundary of the parcel. The record shows that defendants offered to replace the six-inch water main with an eight-inch line, but that such offer was refused.

In brief, the record discloses that the eight-inch line referred to was a second, or additional line, to complete what was described as a "loop," which supplied water to the premises from two sources, albeit, using the same principal main. The "loop" is formed by the interconnection of the six-inch water line installed by defendants and the eight-inch line at issue. This requirement is officially documented in a letter dated September 18, 1972, from the Director of Public Works to plaintiff stating: "You are hereby advised that upon the construction of an eight inch water main across Monroe Street to serve Illini House and the looping of said eight inch main to the north to connect to the existing six inch main * * *" the system would be approved. The record is not clear as to when this requirement was established.

Plaintiff's theory is that defendants failed to provide the eight-inch main required by contract by the time of the closing of the sale and that plaintiff could not complete his construction until an eight-inch main was brought across Monroe Street to effect the completion of a loop." Plaintiff alleges that he made demand for the construction of such eight-inch line and that defendants refused to provide it.

Plaintiff's theory is that he is entitled to damages for the cost of construction of the eight-inch main which he undertook to construct in the fall of 1972 at some time following the receipt of the letter from the Director of Public Works. Plaintiff also claims damages in the difference in cost between an asphalt drive originally planned and a concrete drive alleged to have been built in lieu of asphalt because of weather conditions in the fall or winter of 1972.

Defendants admit that a six-inch main was laid to plaintiff's property line and allege that the same was and is being used as a part of the water system in plaintiff's development. There is evidence that the defendants installed the six-inch main upon the suggestion of the City Engineer Department in lieu of the eight-inch main, and that the plat of such six-inch main as constructed was approved in September 1971. From the record it appears that there is no official objection to, or rejection of, the use of the six-inch main for the purpose for which installed.

It is defendants' theory that the construction of the six-inch line, in lieu of the eight-inch main, was substantially in compliance as a matter of law with the contract duty of defendants to construct an "eight inch water main," that the evidence showed that the line was installed, was accepted and used by plaintiff, and that plaintiff waived the defective performance by refusal to accept defendants' offer to substitute an eight-inch line for the six-inch line installed.

In their motion for a new trial defendants urged that the trial court erred in denying defendants' motions for directed verdicts and in denying their motions for judgment *n.o.v.*, and in admitting plaintiff's evidence of

expenses incurred in the construction of an eight-inch water line to complete the "loop," and building of the concrete driveway.

The parties agree that the construction of the terms of a contract is an issue of law to be decided by the court. It appears that where extrinsic facts are not in dispute construction of the contract is a question of law to be decided by the court, rather than one of fact to be determined by a jury. (*Blackard Construction Co. v. Berry* (1973), 13 Ill. App. 3d 768, 300 N.E.2d 627; *Kern Hotel & Tavern, Inc. v. Home Insurance Co.* (1975), 30 Ill. App. 3d 196, 332 N.E.2d 197.) Here, the question of what was constructed and when and where are not in dispute.

■■ The essential issue presented is whether the contract required that defendants construct the eight-inch line to complete the "loop" which the city required to be constructed in addition to "an eight inch water line." This is an issue for judicial construction and the trial court erred in submitting such issue to the jury. The plain language of the contract requiring "an eight inch water line" contains nothing regarding the making of a "loop." The body of the contract contains no reference to the construction of a nursing home or of a water system satisfactory to its completion. This record shows that the plat of the six-inch line "as built" was on file with the city department in September, prior to the closing in November, and it appears that plaintiff's site plan incorporated such six-inch line "as built" prior to the time of the closing.

In the context of the contract provision for "an eight inch water line," Carroll, an engineer for the city associated with the approval of the plan, testified that if the six-inch line actually installed had been an eight-inch line, such would not have been approved by the city for a nursing home because authorities had concluded that two sources of supply were desirable. It thus appears that if defendants had constructed an eight-inch main in precisely the same fashion, the city requirements would not have been met. It also appears that if defendants had constructed an eight-inch main directly east across Monroe Street to the western edge of plaintiff's parcel just as plaintiff constructed it, such would not have satisfied the city requirements of a "loop." The same witness testified on cross-examination that the city had approved the six-inch line and that such was being used as a part of the "loop" system.

Here plaintiff argues:

> "Had Defendants installed the eight inch line prior to closing as the contract required and had the City approved it, then a request by Plaintiff for a second eight inch line to meet other City requirements imposed afterward might have some merit. But Defendants did not furnish the eight inch line in the first instance, and at the time performance was tendered by replacing the six inch line to the north of the premises on March, 1972, four months

after the closing the tendered performance was insufficient to fulfill the contract requirements because it would not then meet the City requirements."

Contrary to defendants' contentions, at no time were they asked to furnish more than one eight-inch line, and at no time did they do so.

This argument disregards the fact that the contract requirements are determined as of the time that the contract is executed, rather than at a subsequent time after conditions not originally stated have intervened. This is exemplified upon plaintiff's cross-examination where he stated that he would not accept defendants' offer to replace the six-inch line installed with an eight-inch line unless the city waived the requirement of a "loop."

The contract was executed in June 1971. The plaintiff testified on cross-examination that he did *not* know as early as August 1971 that the city would "require me to loop the west main for a nursing home." The testimony of the municipal engineer, Carroll, is that plaintiff was not told of the necessity of providing a "loop" until after his site plan was submitted and a short time before its approval. Such event was some months after the execution of the contract. This testimony seems to contradict plaintiff's present contentions concerning the meaning of the contract language.

■■ A majority of the court conclude that as a matter of law the construction of the six-inch line by defendants followed by plaintiff's use of such line constituted a substantial performance of the contract provision, and that the trial court erred in submitting into evidence testimony of costs incurred incident to the completion of the "loop" by constructing an eight-inch water main and in admitting into evidence testimony as to the expense of constructing plaintiff's drive and further conclude that the issue of waiver of further performance by defendants remains as an issue under properly admitted evidence.

The writer concludes that since plaintiff neither pleaded nor introduced evidence upon damages other than in the issues discussed, the trial court erred in failing to direct a verdict for defendants and in failing to enter judgments *n.o.v.*, and that the judgment entered should be reversed.

The judgment below is reversed and the cause remanded for further proceedings not inconsistent with the views expressed.

Reversed and remanded.

CRAVEN, P. J., and GREEN, J., concur.