CORN BELT BANK, Plaintiff, *v.* LINCOLN SAVINGS AND LOAN ASSOCIATION *et al.*, Defendants—(Lincoln Savings and Loan Association, Third-Party Plaintiff-Appellee, *v.* Robert B. Darley *et al.*, Third-Party Defendants-Appellants).—AMERICAN STATE BANK OF BLOOMINGTON, ILLINOIS, Plaintiff, *v.* LINCOLN SAVINGS AND LOAN ASSOCIATION *et al.*, Defendants—(Corn Belt Bank, Plaintiff-Appellee, *v.* Lincoln Savings and Loan Association, Defendant-Appellant; Barney Leon Schultz *et al.*, Defendants).

Fourth District Nos. 4—83—0039, 4—83—0057 cons.

Opinion filed September 15, 1983.—Modified on denial of rehearing November 30, 1983.

George L. Chesley, of DePew, Grimes, Chesley & Wilson, and G. Michael Prall, of Yoder, Yoder, Flynn, Prall & Willard, both of Bloomington, for appellants Robert B. Darley and Alfred J. Frisch in No. 4—83—0039.

William R. Brandt and Richard E. Stites, of Livingston, Barger, Brandt & Schroeder, of Bloomington, for appellant Lincoln Savings and Loan Association in No. 4—83—0057 and appellee in No. 4—83—0039.

Alan L. Sternberg and James T. Finegan, both of Pratt, Sternberg & Finegan, P.C., of Bloomington, for appellee Corn Belt Bank in No. 4—83—0057.

JUSTICE GREEN delivered the opinion of the court:

These consolidated cases arose from suits filed by certain Bloomington banks against the makers of various promissory notes and against defendant, Lincoln Savings and Loan Association (Lincoln) and its individual directors. This appeal concerns recovery sought by plaintiff, Corn Belt Bank, against Lincoln as a guarantor of certain loans made by plaintiff to defendants, Barney and Joan Schultz, and Donald and Beverly Sizelove. Also in issue are third-party complaints by Lincoln against third-party defendants, Robert B. Darley and Alfred J. Frisch, officers of Lincoln who were alleged to have made the claimed guaranties on behalf of Lincoln, but without authority to do so. The third-party complaints sought indemnity for the allegedly unauthorized acts of making the guaranties. The purported guaranties were contained in letters written by Darley or Frisch to plaintiff.

Plaintiff's original complaint was filed on July 1, 1977. On July 13, 1982, and July 20, 1982, respectively, the circuit court entered summary judgments in favor of plaintiff and against Lincoln in the sums of $50,000 and $125,000 on the notes representing the Schultz loans. After a bench trial on the merits that court entered judgments on November 18, 1982, in favor of plaintiff and against Lincoln in the sums of $114,969.65 and $88,000 on the notes representing the Sizelove loans. On that same day, the court entered judgments for indemnity against Darley and Frisch in the respective total sums of $387,450.02 and $50,000. In doing so the trial court granted summary judgment to Lincoln and against Darley as to an affirmative defense alleged by Darley. On January 12, 1983, the court also gave judgment to Lincoln and against Darley and Frisch in respective sums of $38,436.49 and $23,067.58 to reimburse Lincoln for attorney fees it had expended in defending the litigation brought by plaintiff.

Lincoln has appealed the judgments entered in favor of plaintiff

and against it. Third-party defendants Darley and Frisch appeal the judgments for indemnity, including attorney fees, entered in favor of Lincoln.

Lincoln maintains that the summary judgment entered against it with reference to the Schultz notes should be reversed because a genuine issue of fact existed as to whether (1) Darley or Frisch had apparent authority to guaranty those loans, and (2) any liability of Lincoln was defeated by implied conditions of the documents purporting to be guaranties. Lincoln also asserts that the court erred in entering judgments against it on the Sizelove notes because: (1) The court prevented Lincoln from introducing evidence as to Darley and Frisch's lack of apparent authority to make guaranties; (2) plaintiff's conduct released Lincoln as a guarantor; and (3) Lincoln received no consideration for the alleged guaranties.

Darley and Frisch maintain that the trial court erred in finding against them in the indemnity actions because the evidence showed as a matter of law that: (1) They had express or implied authority to make guaranties of the loans in question; and (2) their conduct was, at least impliedly, ratified by Lincoln. They also contend that: (1) Lincoln failed to prove damages against them; (2) error occurred in rulings on evidence; and (3) the court erred in (a) allowing Lincoln to amend its complaint to request indemnity for attorney fees, and (b) allowing the fees.

We hold that the trial court erred in granting plaintiff summary judgment against Lincoln as to the Schultz' notes. As we subsequently explain, because of that ruling we must reverse the judgment in favor of plaintiff and against Lincoln on the Sizelove notes and remand to the trial court for further proceedings as to all of the relief sought by plaintiff against Lincoln. Because of the foregoing rulings, any judgment for indemnity would be contingent upon recovery by plaintiff against Lincoln. We contingently affirm the judgments for indemnity but we reverse the portions of those judgments awarding damages and also remand to the trial court for a new hearing as to damages. We reverse the award of attorney fees but direct that on remand, such attorney fees be awarded to Lincoln as it is then entitled under the evidence.

This case is quite complex, particularly from a factual standpoint. We recognize the effort put forth by court and counsel in grappling with these complexities and regret the necessity to require additional proceedings. In order to shorten those proceedings as much as possible, we will pass upon questions raised which may not be necessary to our decision. We suggest that at retrial the parties may be able to stipulate to the use of certain evidence already taken.

SUMMARY JUDGMENT ON THE SCHULTZ NOTES

 We turn first to the important question of the propriety of the summary judgment in favor of plaintiff on the Schultz notes. In order for the judgment to stand, the evidence before the court must have been such that, had it existed at a jury trial, the court would have been required to direct a verdict in favor of plaintiff. *Fooden v. Board of Governors* (1971), 48 Ill. 2d 580, 272 N.E.2d 497.

 Under the pleadings, a crucial element that plaintiff was required to prove was that, in guarantying the Schultz notes, Darley and Frisch had *apparent* authority to do so on behalf of Lincoln. An agent has such authority to bind the principal when the principal has permitted the agent to assume such authority or held the agent out to the public as possessing such power. (*Lynch v. Board of Education* (1980), 82 Ill. 2d 415, 412 N.E.2d 447.) The conduct of the principal, whether it consists of affirmative action or of acquiescence, is a necessary element in the creation of apparent authority.

The record before the court at the time it granted summary judgment did show that Lincoln had given Darley and Frisch great discretion in the manner in which they did business at Lincoln's Bloomington branch where the loans in question were made. Lincoln had its original place of business in the city of Lincoln. Darley had been Lincoln's executive vice-president and chief executive officer since 1954. Frisch had been a vice-president under Darley's supervision during all times in question. Apparently, one of their practices was for them to make real estate loans and then report afterwards to the appropriate Lincoln loan committee. This committee apparently seldom disapproved of their actions. The two had been granted express authority from Lincoln's board of directors to borrow money from plaintiff.

One of Lincoln's directors had testified in a deposition that Darley "did pretty much [as] he wanted to" concerning the operations at Lincoln's Bloomington branch. Lincoln's secretary-treasurer had similarly testified that "[w]hen Darley spoke, it was Lincoln Savings and Loan Association speaking." The record was clear that, as far as the ordinary operations of the Bloomington branch was concerned, Darley and Frisch had apparent authority to bind Lincoln.

The question of whether the showing of the apparent authority possessed by Darley and Frisch in the foregoing matters conclusively proved that they had apparent authority to make guaranties of loans on behalf of Lincoln is a more complex problem.

Lincoln asserts that it had no power to make guaranties. It was organized and operated under the Illinois Savings and Loan Act (Ill. Rev. Stat. 1977, ch. 32, par. 701 *et seq.*, now Ill. Rev. Stat. 1981, ch. 17,

par. 3001 *et seq.*). Article 5 of the Act (Ill. Rev. Stat. 1977, ch. 32, pars. 791 through 806) defines with particularity the power of associations operating under the Act to make investments. Article 5 allows associations to make loans, but the Act does not confer the express power to associations to guaranty loans. However, section 1—8 of the Act (Ill. Rev. Stat. 1977, ch. 32, par. 708) provides that such an association "shall have any power conferred on a corporation by the Business Corporation Act [Ill. Rev. Stat. 1977, ch. 32, par. 157.1 *et seq.*] and any power not prohibited by law, which is *reasonably incident* to the accomplishment of the express powers" granted by the Illinois Savings and Loan Act. (Emphasis added.) The Business Corporation Act gives no express power to a corporation to guaranty loans. Accordingly, the question of Lincoln's power to have guarantied the loans here depends upon whether such guaranties were incidental to the powers expressly granted to it to make loans, etc.

■ Apparently, Lincoln is not raising its alleged lack of authority to guaranty the notes as a complete bar to plaintiff's action. We cannot find anywhere in the record that the affirmative defense of *ultra vires* was raised by the pleadings. (See 71 C.J.S. *Pleading* sec. 529(b) (1951).) A business corporation is precluded by statute from raising the issue of *ultra vires* except in a suit (1) by a shareholder, (2) by the corporation against an officer, or (3) by the State seeking dissolution, unless the alleged *ultra vires* act is immoral, against public policy, or expressly prohibited by statute. (Ill. Rev. Stat. 1977, ch. 32, par. 157.8; *American Heritage Investment Corp. v. Illinois National Bank* (1979), 68 Ill. App. 3d 762, 386 N.E.2d 905.) The Illinois Savings and Loan Act is silent on the subject. We interpret Lincoln's position to be that its power to make the guaranty is raised not as an absolute defense, but as a matter to consider in determining whether Darley and Frisch had apparent authority.

■ No case has been presented which passes upon the power of an association organized under the Illinois Savings and Loan Act to guaranty payment on a promissory note. The record here indicated that (1) the Schultzes had substantial indebtedness to Lincoln arising from their purchase and development of real estate, (2) the purpose of plaintiff's loan to them was to enhance those ventures or, more accurately, to prevent their failure, and (3) Lincoln's likelihood of recovery on the debt owed directly to it was enhanced thereby. Under the circumstances shown, guarantying payment of plaintiff's loans to the Schultzes was "reasonably incident" to Lincoln's power to make loans within the meaning of section 1—8 of the Illinois Savings and Loan Act. Therefore, the making of such guaranties was within Lincoln's

corporate power.

■ The mere fact that a corporation has power to make a certain type of contract does not, of itself, clothe even the highest officer of a corporation with apparent authority to bind the corporation to such a contract. Officers have no apparent authority to make unusual or extraordinary contracts on behalf of a corporation. *Sacks v. Helene Curtis Industries, Inc.* (1950), 340 Ill. App. 76, 91 N.E.2d 127.

■ The record before the court at the time it granted summary judgment to plaintiff on the Schultz notes contained little information as to whether savings and loan associations in this State regularly issue guaranties in the normal course of their business. There was some evidence that Darley and Frisch had made some purported guaranties upon behalf of Lincoln, but there was no evidence that Lincoln's board of directors, as a group, knew of this activity. In fact, the evidence indicated that, under the reporting procedures used by Lincoln, the issuance of guaranties by an officer would not be revealed. The issuance of a guaranty would create a liability which their accounting scheme would not reveal. The question of whether Darley and Frisch had apparent authority to bind Lincoln to a guaranty under the circumstances shown was a question of material fact which should have been decided at a hearing on the merits after considering all of the circumstantial evidence. The record was not one which would have required a directed verdict for plaintiff if the proceeding had been a jury trial. (*Fooden.*) The entry of that summary judgment was reversible error.

Without the factual question of apparent authority, the summary judgment in favor of plaintiff would have been proper. The other issue in regard to the summary judgment concerns Lincoln's contention that the alleged guaranty of the Schultz notes contained an implied condition not shown to have been met. The letters containing the guaranties were inartfully drafted, seemingly following the form of a commitment by a savings and loan association to a bank promising to make a long-term mortgage loan to borrowers conditioned upon the borrowers' repayment of a short-term construction loan.

One of the conditions in question was contained in Darley's letter of guaranty of the $125,000 Schultz loan. It stated in part: "you may be assured that we will pay [the principal of plaintiff's loan to the Schultzes] back plus interest directly to you at the time our permanent mortgage is placed on record as to the above real estate." The record showed that prior to the entry of summary judgment, a mortgage from the Schultzes to Lincoln had been placed on land understood by the parties to be that referred to in the guaranty letter. The letter did not speak as to the quality of the mortgage. Its filing of record satisfied

any condition of the letter. The court properly ruled that the condition had been met.

Darley's letter to Lincoln in regard to the $50,000 loan to the Schultzes created more confusion. In the part which plaintiff contends to be a guaranty, the letter stated:

> "[U]pon written notice from you of *default* by [the Schultzes] and the *repayment of the proposed loan*, we will immediately undertake the obligations of the proposed borrowers and fulfill the commitment of our guarantee and indemnification agreement." (Emphasis added.)

■■ The record contained no showing that the proposed loan had been repaid, but the reference in the letter to the default in the loan and then the repayment of the loan was either meaningless or contradictory. If the guaranty was activated only when the loan was repaid, there would be no liability to the guarantor except expenses of collection such as attorney fees. The language in question is ambiguous, requiring consideration of previous and contemporary transactions and facts. (*Heifner v. Board of Education* (1975), 32 Ill. App. 3d 83, 335 N.E.2d 600.) In interpreting an ambiguous document the court will attempt to give a construction to the document that does not create a *nudum pactum*. As the evidence of relevant facts and of contemporary and previous transactions was not in dispute, the interpretation of the letter was entirely a question of law. (*Carlson v. Cremeens* (1977), 49 Ill. App. 3d 742, 364 N.E.2d 114.) Accordingly, the issue could properly be resolved by a summary judgment. The trial court properly construed the letter to be a guaranty of a loan plaintiff was intending to make to the Schultzes. The prior dealings of plaintiff with Lincoln through Darley and the Schultzes so indicated. The circumstantial evidence indicated that neither repayment of the underlying loan nor any other loan was intended to be a condition of the guaranty. The trial court ruled correctly on the question of the possible conditions of the guaranty.

### JUDGMENT ON THE SIZELOVE NOTES

Because of our reversal and award of a new trial to Lincoln as to the counts in which plaintiff sought recovery on the Schultz loans, we must also reverse and grant a new trial to Lincoln on the counts in which plaintiff sought recovery on the Sizelove notes. An integral part of the proof on these latter counts was proof that Darley and Frisch had apparent authority to guaranty those loans. The trial court ruled that issue to have been decided by its granting summary judgment on the counts concerning the Schultz notes. We need not decide whether the trial court's theory in making the ruling was correct. Upon a rever-

sal of the summary judgment, any use of the determination made in granting that judgment became improper.

Lincoln contends that the judgment for plaintiff on the Sizelove loans should be reversed without remand because any guaranty on those notes was discharged where (1) plaintiff took renewal notes from the Sizeloves for those guarantied, and (2) plaintiff released an assignment of a beneficial interest in a land trust which secured the guarantied note. The significant evidence in these matters was mostly undisputed.

Various guaranties by Darley, purportedly on behalf of Lincoln, all in substantially the same form, had been made for loans by plaintiff to the Sizeloves prior to December 1976. On December 21, 1976, Darley sent plaintiff letters purporting to guaranty notes of the Sizeloves in the amounts of approximately $88,000 and $115,000. Notes in those principal amounts were executed and delivered by the Sizeloves to plaintiff on that date. These were the notes upon which judgments were obtained against Lincoln as guarantor. These notes were payable on June 16, 1977. No payments were made, but on June 16, 1977, Sizeloves executed and delivered to plaintiff new notes in the same amount as those previously mentioned but with a slightly lower interest rate. No guaranty letters were issued on behalf of Lincoln for those notes. Plaintiff first demanded payment of the Sizelove notes from Lincoln on August 30, 1977. Lincoln refused to honor the demand.

Subsequently, additional notes were taken from the Sizeloves in the same principal amounts, but with higher interest rates on June 12, 1978, and June 12, 1979. Then, on December 27, 1979, a single note in the principal sum of $415,000 due and payable July 1, 1981, with interest at the rate of 14½% was executed by Corn Belt as trustee of a land trust of which Donald Sizelove held a 90% interest. The principal of the note was purported to be the Sizeloves' indebtedness on the previous notes plus interest accrued thereon and other indebtedness.

■■■ A general rule has developed that if a new note is taken for the same indebtedness evidenced by a prior note, a guarantor on the prior note is discharged if the new note constitutes a valid agreement supported by consideration extending the time for payment on the old note. (38 C.J.S. *Guaranty* sec. 75a (1943); see *Schuman v. Arsht* (1928), 249 Ill. App. 562; *cf. White v. Walker* (1863), 31 Ill. 422.) However, when the new note is not based on valid consideration flowing to the payee, the extension of time purportedly provided for in the new note does not operate as a valid extension of the time for payment of the debt and does not operate to discharge the guarantor. *Mitchell v. Peterson* (1981), 97 Ill. App. 3d 363, 422 N.E.2d 1026; 38 C.J.S. *Guar-*

*anty* sec. 75b (1943); *Lee v. Pioneer State Bank* (1981), 97 Ill. App. 3d 97, 423 N.E.2d 218.

Application of the foregoing rule of discharge depends not only upon whether the new notes are supported by consideration flowing to the payee of the old notes, but also upon the related question of whether the new notes were intended to discharge the old notes or merely to operate as security for those notes. In *Weger v. Robinson Nash Motor Co.* (1930), 340 Ill. 81, 172 N.E. 7, the supreme court held that the question of whether new notes are intended as a satisfaction of a previous note discharging the guarantor of that note is basically a question of fact. There, the court upheld the trier of fact's determination that renewal notes were not intended to discharge the old notes even though the holder of the old notes had marked them as being paid. The court noted that a holder would not be likely to intend a new note, for which there was no guarantor, to be a satisfaction of a previous note for which there was a guarantor.

■■■ Thus, even if the new notes given here differed from the old as to interest, compounding of interest, or other conditions and terms in such a way as to indicate Sizeloves had given consideration for an extension of time, that would not compel a determination that the new notes were intended to discharge the old. That was a question of fact for the trier of fact. The trial court's determination in that regard was not contrary to the manifest weight of the evidence. Accordingly, the trial court's decision that any guaranty which Lincoln might have made was not discharged by the execution of the new notes was supported by the evidence.

■■■ The guaranty letters concerning the Sizelove notes make no mention of any requirement that security be taken by plaintiff for those loans. After the notes were executed, the Sizeloves did secure the notes by an assignment of their beneficial interest in a land trust. Later, by agreement with plaintiff, that assignment was released and properties held in the trust sold with the proceeds applied to other indebtedness of the Sizeloves to plaintiff. Had the security of the assignment of beneficial interest been required by the terms of the guaranty the debt would have been discharged. No authority is cited for Lincoln's contention that the release of the gratuitous security, given after the loan was made, discharged the guarantor. We agree that the trial court properly ruled that the guaranty was not destroyed by plaintiff's release of this security.

■■■ Lincoln asserts that no consideration flowed to it to make valid its guaranties of December 21, 1976, because the effect of that transaction was merely the renewal of old notes. While a maker of a

note may give no consideration to a holder when an old note is substituted for a new, the forbearance of the holder may constitute consideration to a guarantor. Here, plaintiff's forbearance against Sizeloves who were heavily indebted to Lincoln constituted consideration for Lincoln's guaranty of the notes upon which suit was brought. Any guaranties made by Lincoln were not void for lack of consideration.

### THIRD PARTY ACTION FOR INDEMNITY

■■■ We now turn to the indemnity actions against Darley and Frisch. We consider first the trial court's determination that they acted without express or implied authority. We have previously indicated that Lincoln would have had authority to make a valid guaranty under the circumstances, but neither Darley nor Frisch necessarily had actual authority to do so. We do not consider the broad powers given them to necessarily include the authority to make guaranties. The broad scope of the resolutions of Lincoln's governing board made no express reference to guaranties. There was no evidence that officers of savings and loan associations ordinarily made binding decisions in this regard.

The most telling evidence against Darley and Frisch was the substantial evidence that they went to great lengths to keep knowledge of their issuance of guaranties from the directors. One witness testified that Darley had stated that if the directors knew of one guaranty he had issued, Darley's job would be lost. Express or implied authority is determined by the internal arrangement and dealings between the principal and its agents. Apparent authority is determined from outward appearance. The trial court found Darley and Frisch had apparent authority as a matter of law, but not express or implied authority. We have reversed the judgment supporting the findings that they had apparent authority as a matter of law. Factual findings that they had apparent, but not express, or implied, authority would not necessarily be inconsistent. Here, the determination that they had neither express nor implied authority to do so was not contrary to the manifest weight of the evidence.

Darley filed an affirmative defense to Lincoln's complaint for indemnity alleging that a resolution adopted at a Lincoln shareholders meeting expressly ratified his acts in issuing various letters of guaranty. The resolution stated in pertinent part:

> "BE IT AND IT IS HEREBY RESOLVED by the stockholders of Lincoln Savings and Loan Association, in Annual Meeting assembled, that the report of money had, and received, the business transacted and the acts and doings of the officers and directors of this Association covering the fiscal year ended December

31, 1976, be and the same is hereby approved and confirmed.

BE IT RESOLVED by the stockholders that the acts and doings, collections, compromises, receipts, and expenditures of money, and all other transactions entered into and performed by the officers and directors or any of them, of this Association as set forth in and reflected by said report, be approved, ratified, and confirmed."

Lincoln filed a motion for summary judgment supported by the affidavit of one of its directors who had made the motion to adopt the resolution. The affidavit stated that it had not been the intent of the resolution to ratify Darley's acts in making the guaranties. Darley maintains that at least a question of fact was raised as to whether the motion constituted a ratification of his acts. The resolution was *prima facie* evidence of the matters set forth therein. (18 Am. Jur. 2d *Corporations* sec. 177 (1965).) Had the resolution and the affidavit been in conflict, a material question of fact would have existed. However, the resolution purported to ratify conduct described in a report presented to the meeting. This report made no mention of guaranties having been made on behalf of Lincoln. The trial court properly granted that summary judgment.

Darley and Frisch contend that Lincoln impliedly ratified their conduct in making the guaranties. This contention is based on the general rule that a party cannot repudiate acts of another done on his behalf and at the same time accept the fruits and benefits of those acts unless within a reasonable time of learning that the acts of the other were unauthorized, he returns the benefits. They cite *Vetesnik v. Magull* (1932), 347 Ill. 611, 180 N.E. 390, *Ault v. Associates Discount Corp.* (1963), 43 Ill. App. 2d 409, 193 N.E.2d 226, and *Karetzkis v. Cosmopolitan National Bank* (1962), 37 Ill. App. 2d 484, 196 N.E.2d 72, which do set forth that general rule. However, the retention of benefits by the principal after it acquires knowledge of another's breach of duty will not amount to ratification if, without fault of the principal, "conditions are such that [the principal] cannot be placed in status quo or repudiate the entire transaction without loss." 3 Am. Jur. 2d *Agency* sec. 177 (1962).

Here, there was substantial evidence that much of the money obtained by the Schultzes and Sizeloves in guarantying the debts ultimately guaranteed by Darley or Frisch did inure, directly or indirectly, to Lincoln's benefit either by being used to (1) pay off debts to Lincoln, (2) improve the financial position of the borrowers who were debtors to Lincoln, or (3) enhance the security held by Lincoln. However, the court could properly have found Lincoln to be entirely without knowl-

edge of what was taking place until well after the transaction whereby the guaranties were issued had been completed. No suggestion is made by Darley and Frisch as to how Lincoln could have repudiated those benefits and placed itself in substantially the same position as it was in before the guaranties were issued. We note that the cases cited by Darley and Frisch are those where innocent third persons are the adversaries of purported principals who contend they are not bound by unauthorized acts of purported agents. Here, the dispute is between a principal and agents who have allegedly acted beyond their authority. The requirement of the rule that the principal is not required to repudiate unless it can obtain status quo is particularly appropriate and fair.

The trial court's determination that implied ratification did not take place was supported by the evidence.

Although the fact that Lincoln necessarily received benefits does not constitute ratification, it does negate the propriety of damages which were fixed in the full amount of the judgments against Lincoln. Darley and Frisch are entitled to a new trial on the issue of damages if plaintiff is ultimately permitted recovery from Lincoln. At that time, Lincoln should also be permitted to obtain judgment for such attorney fees as are then appropriate.

We find no reversible error in any evidentiary rulings made by the trial court in the indemnity actions.

Accordingly, we reverse (1) the summary judgments entered in favor of plaintiff and against Lincoln on the Schultz notes, (2) the judgments in favor of plaintiff and against Lincoln on the Sizelove notes, and (3) the judgments in favor of Lincoln and against Darley and Frisch on the indemnity actions to the extent of the award of damages. All other orders appealed are affirmed. We remand to the circuit court of McLean County for a new trial on the claims of plaintiff against Lincoln on the Schultz and Sizelove notes and for a new trial as to damages on the conditional indemnity actions by Lincoln against Darley and Frisch.

Affirmed in part, reversed in part, and remanded.

MILLS and MILLER, JJ., concur.