CLIFFORD G. LEE, JR., Plaintiff-Appellant, *v.* PIONEER STATE BANK, Defendant-Appellee.

Third District    No. 80-493

Opinion filed June 17, 1981.

Douglas E. Reymore, Jr., of Leiter, Leiter & Sahn, of Peoria, for appellant.

Gregory S. Bell, of Swain, Johnson & Gard, of Peoria, for appellee.

Mr. JUSTICE STOUDER delivered the opinion of the court:

Plaintiff Clifford G. Lee, Jr., filed a complaint against defendant Pioneer State Bank seeking a refund of certain moneys paid pursuant to a guaranty, as well as punitive damages. Both parties moved for summary judgment, and after a hearing the circuit court of Peoria County found in defendant's favor.

The facts are undisputed. On January 15, 1974, defendant granted Realty and Management Associates, Inc. (hereinafter RMA), an unsecured line of credit in the amount of $20,000. At this time, plaintiff was the corporation's secretary-treasurer and executed a personal guaranty of the repayment of any credit granted to RMA, up to $20,000, as did two other officers. On four occasions during the seven months beginning in January 1974, defendant loaned money to the corporation. By July 16, 1974, defendant had extended a total of $15,200 of credit, none of which was ever repaid by RMA.

On August 19, 1974, plaintiff presented to defendant a notice to quit as guarantor, and defendant did not thereafter grant any additional credit to RMA. Defendant did extend the existing debt on October 15, 1974, when Merild C. McCann II and Lyle E. Moser, president and executive vice-president of RMA, signed a consolidated note for $15,200, bearing interest at 10½%. On March 7, 1975, the loan was again extended when McCann and Moser signed a 9½% note.

When the latter note was not paid, defendant looked to the guarantors for payment. On or about December 31, 1975, plaintiff and Moser agreed to each pay half of the debt, plus interest, as McCann could not be located. After completing the payment of his share, plaintiff filed this action. The trial court properly entered summary judgment if the pleadings, depositions, admissions and affidavits on file show that there is no genuine issue as to any material fact and that defendant is entitled to a judgment as a matter of law. Ill. Rev. Stat. 1977, ch. 110, par. 57(3).

The issue presented for our review is whether the trial court erred in granting summary judgment in defendant's favor when, after receiving plaintiff's notice to quit as guarantor, defendant extended the loans to RMA without notice to plaintiff. In regard to this issue, neither party contends there is a genuine issue as to any material fact.

■■ An extension of time, for a definite period, for the payment or performance of a principal obligor may discharge a guarantor from further liability under his guaranty. (*Cf. White v. Walker* (1863), 31 Ill. 422 (lease).) For such a discharge to occur, there must be a binding agreement between a creditor and a principal obligor, entered into without a guarantor's knowledge, founded on valuable consideration, for an extension of time for a definite period, whereby the creditor cannot collect from the principal debtor until the extended time expires. (Accord,

*Many, Blanc & Co. v. Jacobson* (1909), 149 Ill. App. 240.) Neither party contests these principles nor denies their general applicability to the facts at bar.

What the parties do contest is the legal effect of the following language found in plaintiff's, and his co-officers', guaranties:

> "After delivery of written notice to said BANK not to do so, additional credit shall not be given on the faith hereof, but liability hereunder shall continue until all indebtedness, or any extension thereof, existing at the time of giving said notice, is fully paid."

The rules governing the determination of a guaranty's legal effect were recently set forth in *Dee v. Bank of Oakbrook Terrace* (1980), 84 Ill. App. 3d 1022, 1024-25, 406 N.E.2d 195, 198:

> "The meaning of a guaranty is a matter of law, to be determined by the court. Guaranty agreements are to be strictly construed in favor of the guarantor. (*King Korn Stamp Co. v. Guaranty Bank & Trust Co.* (1969), 114 Ill. App. 2d 428, 437, 252 N.E.2d 734, 739.) * * * The agreement is to be construed to give effect to the intentions of the parties. (*Scovill Manufacturing Co. v. Cassidy* (1916), 275 Ill. 462, 474, 114 N.E. 181, 186.) But where there is a written contract in evidence, the intentions of the parties must be determined from its language alone, not from what the parties thought. (*Saddler v. National Bank of Bloomington* (1949), 403 Ill. 218, 228, 85 N.E.2d 733.) Where the language of the contract is clear and unambiguous, extrinsic facts are not to be considered. (*Katz v. Diabetes Association* (1975), 31 Ill. App. 3d 240, 243, 333 N.E.2d 293.) Only where the guaranty agreement is ambiguous or where there is a question of the parties' intention may the subsequent acts of the parties be used as evidence of their intentions. *Claude Southern Corp. v. Henry's Drive-In, Inc.* (1964), 51 Ill. App. 2d 289, 299-300, 201 N.E.2d 127, 132."

The language at bar is not ambiguous. While defendant could not grant additional credit to RMA under the aegis of the guaranty, liability thereunder continued until the pre-notice indebtedness or any extension thereof was fully paid. Plaintiff's argument is that the notes executed after defendant's receipt of his notice to quit were additional credit, not extensions of the pre-notice debt.

In *Continental Illinois National Bank & Trust Co. v. Cardwell* (1936), 287 Ill. App. 227, 4 N.E.2d 770, *appeal dismissed*, the bank sued upon a written guaranty which provided, *inter alia*:

> " 'This guaranty shall be a continuing, absolute and unconditional guaranty, and shall remain in full force and effect until written notice of its discontinuance shall be actually received by said Bank, and also until any and all said indebtedness, obligations

and liabilities existing before receipt of such notice shall be fully paid. The death or dissolution of the undersigned shall not terminate this guaranty until notice of any such death or dissolution shall have been actually received by said Bank, nor until all of said indebtedness, obligations and liabilities existing before receipt of such notice shall be fully paid.

The liability hereunder shall in no wise be affected or impaired by (and said Bank is hereby expressly authorized to make from time to time, without notice to anyone), any sale, pledge, surrender, compromise, settlement, release, renewal, extension, indulgence, alteration, substitution, exchange, change in, modification or other disposition of any of said indebtedness, obligations and liabilities, either express or implied, or of any contract or contracts evidencing any thereof, or of any security or collateral therefor. * * *' "

(*Continental Illinois National Bank & Trust Co. v. Cardwell* (1936), 287 Ill. App. 227, 230, 4 N.E.2d 770, 771-72.)

Cardwell argued that two extensions or renewals of debt, after he served his written notice, discharged his liability under the guaranty. The court held that both the notice and the payment of the prenotice debt were necessary for discharge. Cardwell then argued, as does plaintiff herein, that the new notes which were executed constituted a new indebtedness. While the court did not find that a sufficient notice of revocation had been received, it went on to address this contention:

"It will be noted that this contention is based upon the assumption that defendant's letter of April 17, 1934, to the vice president of plaintiff bank, constituted a revocation of the guaranty. Our holding that it did not would be a sufficient answer to the contention, but aside from that holding, there is no real merit in the contention. * * * The general rule is that where a note is given merely in renewal of another note and not in payment, the renewal does not extinguish the original debt nor change the debt except that it postpones the time for payment. The case of *Gay v. Ward*, 67 Conn. 147, cited by defendant in support of the instant contention, is not in point under the facts. Here the money lent to Butler upon the execution of the guaranty has never, in fact, been paid. Judgment was taken against Butler by default. No cash was paid by way of principal or interest to the bank at the time it took the renewal notes of March 17, 1934. The loan of $100,000 was reduced, by payments, to $92,500. This sum, with the accrued interest, is the amount of the judgment in this case. * * *"

(*Continental Illinois National Bank & Trust Co. v. Cardwell* (1936), 287 Ill. App. 227, 245-46, 4 N.E.2d 770, 777-78.)

While Cardwell did not argue, as does plaintiff herein, that the accrual of interest constituted a new indebtedness, the court nonetheless found such interest includable in the amount of judgment. Plaintiff herein further argues that the changes in interest rates also constituted a granting of additional credit, as the amount due on the note would be different. As the accumulation of accrued interest also causes this effect, we find no merit in this argument.

■■ While plaintiff raises other arguments as well, we similarly find them without merit. As the guaranty at bar is not ambiguous, we are obligated to give effect to the language which the parties adopted. (See *Jacobson v. Devon Bank* (1976), 39 Ill. App. 3d 1053, 1055, 351 N.E.2d 254, 256, *appeal denied* (1976), 64 Ill. 2d 596.) Under that language and the uncontroverted facts herein, defendant was entitled to a judgment as a matter of law.

Accordingly, the judgment of the circuit court of Peoria County is affirmed.

Affirmed.

SCOTT, P. J., and BARRY, J., concur.