The LEXINGTON INSURANCE COMPANY, Plaintiff–Appellant,

v.

RUGG & KNOPP, INC., and the Salt Lake City Corporation, Defendants–Appellees.

No. 98–2078.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 6, 1998.

Decided Jan. 14, 1999.

David L. Joslyn, Rivkin, Radler & Kremer, Chicago, IL, Steven R. Merican (argued), Naperville, IL, for Plaintiff–Appellant.

Eric S. Darling (argued), Schmidt, Darling & Erwin, Milwaukee, WI, for Defendant–Appellee Rugg & Knopp, Inc.

Timothy J. Strattner, Schellinger & Doyle, Brookfield, WI, Robert G. Wright, Richards, Brandt, Miller & Nelson, Salt Lake City, UT, for Defendant–Appellee Salt Lake City Corporation.

Before CUMMINGS, EASTERBROOK and EVANS, Circuit Judges.

CUMMINGS, Circuit Judge.

The Salt Lake City Corp. ("Salt Lake City"), Utah, contracted with Rugg & Knopp, Inc. ("R & K") to construct a facility at the municipal airport. R & K did an unsatisfactory job and was ultimately terminated for negligence and incompetence. R & K had the foresight to insure itself against losses due to such dereliction with the Lexington Insurance Company ("Lexington"). Unfortunately for R & K, it failed to notify Lexington within the period prescribed by the contract of insurance. But luck—or the Wisconsin legislature—may have been with R & K, because a state statute may have imposed liability on Lexington despite the facial provisions of the contract. Whether it did so is the question here.

In this diversity case to be decided under Wisconsin law, Lexington sought a declaratory judgment that, because of R & K's untimely notification, Lexington should be relieved of its obligation under the insurance policy to indemnify R & K for the losses arising from R & K's incompetent performance of the construction contract. Salt Lake City is a defendant because it has an interest in coverage under the insurance policy in dispute. On cross-motions for summary judgment, the district court granted that of R & K and Salt Lake City and denied that of Lexington. We affirm.

## I. Background

The record establishes the following undisputed facts: In 1992, Salt Lake City awarded R & K a contract to design and partially construct a Fire Simulation Training Facility at the city airport. In April 1994, Lexington issued R & K a "claims-made" insurance policy ("Policy 1"). The period of Policy 1 was April 14, 1994 to April 14, 1995. In February 1995, R & K applied for a renewal Policy ("Policy 2"), stating that it was unaware of any circumstances likely to give rise to a claim against R & K. This was not true. R & K knew that Salt Lake City was unhappy. From January to June 1995 (twice in January), Salt Lake City informed R & K of various complaints it had about R & K's inadequate and negligent performance of its obligations under the construction contract

between them. Not receiving satisfaction, Salt Lake City terminated the construction contract on June 1, 1995. On that date Salt Lake City notified R & K and Lexington that it sought compensation of over $160,000 for claims arising from R & K's negligence in performing the construction contract. This was the first that Lexington had heard of any claims against R & K. Fearing that it might have to pay, however, Lexington filed the action we now consider.

If the interpretation of the insurance policy were the only issue, setting aside any statutory context, the plaintiff would win. The defendants did not provide notice of their losses within the period required by the policy. But the Wisconsin "notice-prejudice" statutes would seem to say that this failure does not bar liability for insurer or invalidate or reduce a claim unless the insurer was prejudiced by the failure. The statutes apply this rule to "every liability insurance policy." Plaintiff argues that the statutes do not apply, however, to the sort of policy at issue here, a "claims-made" policy. Such a policy limits coverage to claims made during the policy period and reported to the insurer within a certain period—here within 30 days of its expiration. An "occurrence" policy, by contrast, covers occurrences within the policy period regardless of when filed, but typically require notice to be given "as soon as reasonably possible." The main issue posed in this appeal is whether the statutory term "every" means "some but not all," excluding, among others, claims made policies. We agree with the district court that "every" means "every," and therefore conclude that that court was correct in its disposition of the case.

## II. Analysis

 By way of preliminary observation, this Court reminds the parties that Circuit Rules are to be followed. The rule in this Circuit in a diversity case is that where any party is a corporation, the jurisdictional statement "shall identify both the state of incorporation and the state in which the corporation has its principal place of business." 7th Cir. R. 28(a)(1). In its jurisdictional statement, Lexington simply asserts that the parties are of different state citizenships. R

& K and Salt Lake City aver that Lexington's statement of the Court's jurisdiction is "complete and correct." It is not. This cavalier attitude towards Circuit Rules is unacceptable and reflects quite poorly on the counsel for all parties. A bare recitation that subject matter jurisdiction exists is insufficient. If the record did not happen to support the facts showing that diversity jurisdiction existed, we should have to remand to the district court for certification that such jurisdiction existed. *See Jason's Foods, Inc. v. Peter Eckrich & Sons, Inc.*, 768 F.2d 189 (7th Cir.1985). That would be a tedious, time wasting, and unnecessarily costly enterprise. Parties in diversity cases must prove subject matter jurisdiction and abide by Court Rules.

■ Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265. No party in the present case raises any argument that there are disputed issues of material fact. The only questions posed are issues of substantive Wisconsin state law concerning the interpretation of an insurance policy and whether the policy is subject to the Wisconsin statutes. Under *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, a federal court of course applies state substantive law and federal procedural law in a diversity case. As a court sitting in diversity, we attempt to predict how the Wisconsin Supreme Court would decide the issues presented here. *Allen v. Transamerica Ins. Co.*, 128 F.3d 462, 466 (7th Cir.1997). Where the state supreme court has not ruled on an issue, decisions of the state appellate courts control, unless there are persuasive indications that the state supreme court would decide the issue differently. *Id.* In the absence of Wisconsin authority, we may consider decisions from other jurisdictions. *Valerio v. Home Ins. Co.*, 80 F.3d 226, 228 (7th Cir.1996). We review the district court's grant of summary judgment de novo, *Bourke*

*v. Dun & Bradstreet*, 159 F.3d 1032, 1036 (7th Cir.1998), as well as reviewing de novo the determination of the content of the state law to be applied. *Salve Regina College v. Russell*, 499 U.S. 225, 231, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190.

We first consider the interpretation and application of the contract of insurance, Policy 1. Under Wisconsin law, "[t]he construction of ... insurance policies is generally a matter of law and is controlled by the same rules of construction as are applied to contracts generally." *Kremers–Urban Co. v. American Employers Ins. Co.*, 119 Wis.2d 722, 351 N.W.2d 156, 163 (1984). As a matter of law, this Court construes the policy language de novo. *Scottish Guarantee Ins. Co. v. Dwyer*, 19 F.3d 307, 309 (7th Cir.1994). Under the terms of Policy 1, standing alone,[1] R & K would not be entitled to coverage because it failed to provide timely notice. The policy expressly provides that for coverage to apply, the following conditions "must be satisfied:.... 3. claim is made against insured during the policy period; 4. the insured must report the claim to the company, in writing, as otherwise provided in this policy within the policy period or within the thirty (30) day period succeeding the expiration of the policy period." The policy period ran for one year from April 14, 1994. Salt Lake City made claims against R & K as early as January 18, 1995 and again in February and March of 1995. A claim, according to Policy 1 itself, is "any demand for money or services," and Salt Lake City demanded reimbursement for various costs and R & K's provision of various construction services in its correspondence from January to March of 1995. Policy 1 expired on April 14, 1995. R & K had to notify Lexington of the claims within 30 days, or by May 14, 1995. Lexington was not notified until June 1, 1995. Therefore, under the terms of Policy 1 on its face, Lexington would not have been obligated to pay the claims under the contract.

---

**1.** As explained below, Wisconsin law arguably changes the terms of the contract, creating a notice-prejudice provision implied in law which trumps the terms of the contract as written and standing alone. If so, Lexington would also lose as a matter of contract interpretation. But since this result requires statutory interpretation, we defer the explanation until the interpretation and application of the statute are set forth.

Lexington is not obligated to compensate R & K under Policy 2, the renewal policy running for a year from April 14, 1995, identical in every way, except the period, to Policy 1. The claims were not made within the Policy 2 policy period and R & K did have "knowledge prior to the effective date of this policy of such ... circumstance likely to give rise to a claim," which, by the terms of Policy 2, barred any liability of the insurer. Salt Lake City's claims against R & K constituted such knowledge. R & K and Salt Lake City do not contest liability under Policy 2.

■ Still, Wisconsin law may supersede the notice provisions in Policy 1, allowing R & K and Salt Lake City to recover. Wisconsin insurance policies are governed by Wisconsin law. *See Lopardo v. Fleming Cos., Inc.,* 97 F.3d 921, 926 (7th Cir.1996). Wisconsin has two arguably applicable "notice-prejudice" statutes. Wis. Stat § 631.81(1) says:

Timeliness of notice. Provided notice or proof of loss is furnished as soon as reasonably possible and within one year after the time it was required by the policy, failure to furnish such notice or proof within the time required by the policy does not invalidate or reduce a claim unless the insurer is prejudiced thereby and it was reasonably possible to meet the time limit.

According to Wis. Stat. § 632.26:

(1) Every liability insurance policy shall provide:

. . .

(b) That failure to give any notice required by the policy within the time specified does not invalidate a claim made by the insured if the insured shows that it was not reasonably possible to give the notice within the prescribed time and that notice was given as soon as reasonably possible.

(2) Effect of failure to give notice. Failure to give notice as required by the policy as modified by sub. (1)(b) does not bar liability under the policy if the insurer was not prejudiced by the failure, but

the risk of nonpersuasion is upon the person claiming there was no prejudice.

The first says that an insurer remains liable despite untimely notice as long as it is not prejudiced and notice is provided not later than a year after the expiration of the time required by the policy—sooner if reasonably possible. The second reads this notice-prejudice provision into "every liability policy" by operation of law and says that late notice does not by itself bar the insurer's liability.

On their face, these notice-prejudice statutes say, essentially, that in Wisconsin no insurer may contractually limit its liability to claims made within the policy period and for which notice is given within a specified term from the end of that period, *e.g.,* as here, within 30 days. Instead, the insurer must pay unless it was prejudiced by the untimely notice or the insured did not provide notice within a year of the expiration date of the policy or as soon as reasonably possible. So argue R & K and Salt Lake City. They maintain that since no showing of prejudice was made, Lexington remains liable under the policy and must honor its statutorily imposed obligations. Lexington replies that the notice statutes do not apply to claims-made policies.

■ Lexington's argument is both bold and implausible. The Wisconsin Supreme Court has adopted the normal rule of statutory interpretation, *viz.*: that plain language governs. "The goal of statutory interpretation is to ascertain and give effect to the legislature's intent. To accomplish this goal, a court first resorts to the plain language of a statute. If the intent of the legislature is clear from the statute's language, a court must give effect to this intent and go no further." *State ex rel. Jacobus v. State,* 208 Wis.2d 39, 559 N.W.2d 900, 903 (Wis.1997) (internal citations omitted). "We begin by examining the plain language of the statute, and if the language is not ambiguous, we apply the plain meaning of the statute to the facts before us. Only if the statute is ambiguous do we attempt to discern legislative intent by looking beyond the language to the scope, history, context, subject matter and object of the statute." *Kenison v. Welling-*

*ton Ins. Co.*, 218 Wis.2d 700, 582 N.W.2d 69, 71 (1998) (internal citations omitted).

A starting place is not an ending place. Sometimes a court may be forced to read a statute otherwise than literally, if, for instance, it leads to absurd results. Or again, an ambiguous or unclear statute cannot be read literally to deliver an unequivocal answer. These exceptions to the plain meaning rule need not be surveyed here because no such special circumstances exist in this case.

■ The language of § 632.26 (1) says that it covers "every" liability insurance policy. Policy 1 is a liability insurance policy. Therefore, Policy 1 falls under the notice-prejudice provisions of the statute. Moreover, chapters 631 and 632 of the Wisconsin Statutes, governing insurance contracts generally, apply to "all insurance policies issued or issued for delivery in Wisconsin." Wis. Stat. § 631.01(1). "The plain language of § 631.01(1)" was quite clear to a Wisconsin appellate court. *See Kenison*, 218 Wis.2d 700, 582 N.W.2d 69, 71. Since Policy 1 was issued or delivered in Wisconsin, and since there is no exception for claims-made policies, the statute applies. The language of the statute, then, is clear on its face, and normally there is no need to go further.[2]

In view of this, a very strong argument would be required to read the statutory notice provisions to exclude any kind of liability insurance not expressly excepted from the notice-prejudice rules. Plaintiff presents two arguments for so reading them. The first argument concerns what other jurisdictions have done. The second argument turns on Wisconsin caselaw. Neither argument is strong enough.

Lexington's first argument is that courts in other jurisdictions which have considered the issue have held that notice-prejudice rules like that adopted by the Wisconsin legislature do not apply to claims-made policies. To apply a notice-prejudice rule in this con-

text, plaintiff says, would convert claims-made into occurrence policies, altering a basic term of the insurance contract. *See Esmailzadeh v. Johnson and Speakman*, 869 F.2d 422, 424–425 (8th Cir.1989) (involving a Minnesota claims-made policy); *see also Zuckerman v. Nat'l Union Fire Ins. Co.*, 100 N.J. 304, 495 A.2d 395 (N.J.1985) (refusing to apply a notice-prejudice rule to a claims-made policy); *accord City of Harrisburg v. Internat'l Surplus Lines Ins. Co.*, 596 F.Supp. 954 (M.D.Pa.1984); *Gulf Ins. Co. v. Dolan, Fertig & Curtis*, 433 So.2d 512 (Fla. 1983); *Schubiner v. New England Ins. Co.*, 207 Mich.App. 330, 523 N.W.2d 635 (Mich.Ct. App.1994), and several other cases cited by plaintiff.

■ In the absence of Wisconsin Supreme or Appellate Court authority on point, reasoning from what state or federal courts in other jurisdictions have done is acceptable. *Valerio*, 80 F.3d at 228. However, a federal court sitting in diversity must proceed with caution in making pronouncements about state law. In any diversity case, what we say lacks any precedential force for state courts. *Diginet, Inc. v. Western Union ATS, Inc.*, 958 F.2d 1388, 1395 (7th Cir.1992). While it is controlling upon federal district courts until gainsaid by a higher state court, nonetheless, as Judge Ripple of this Circuit has remarked, "it is rarely possible, given the difficulty in making 'Erie Guesses,' to provide, in any principled fashion, a great deal of meaningful guidance for the resolution of future cases. Moreover, federal court pronouncements on the content of state law inherently involve a significant intrusion on the prerogative of the state courts to control that development." *Todd v. Societe Bic, S.A.*, 21 F.3d 1402, 1416 (7th Cir.1994) (Ripple, J., dissenting on other grounds). Such pronouncements risk "interrupt[ing] ... the orderly development and authoritative exposition of state law ... by sporadic federal court adjudications." *Factors, Etc., Inc. v.*

---

**2.** Insofar as legislative history is concerned, it does not help Lexington. The comment to § 631.81(1) states that the principle that untimely notice should not invalidate or reduce a claim unless the insurer is prejudiced thereby "should apply to *all* insurance contracts" (emphasis added). The comment to § 632.26(1) remarks that the notice-prejudice provision is mandatory in "*all*" liability policies" (emphasis added). The comment to § 632.26(2) says that the rule of law stating that the effect of a failure to give notice does not bar liability unless the insurer is prejudiced by that failure "is applicable to *all* liability insurance" (emphasis added).

*Pro Arts Inc.*, 652 F.2d 278, 282 (2d Cir. 1981). If our predictions are erroneous, then, as Judge Sloviter has said:

> [U]ntil corrected by the state supreme court, [they] inevitably skew the decisions of [those] who rely on them and inequitably affect the losing federal litigant who cannot appeal the decision to the state's supreme court; they may even mislead lower state courts that may be inclined to accept federal predictions as applicable precedent.

Dolores K. Sloviter, *A Federal Judge Views Diversity Jurisdiction through the Lens of Federalism*, 78 *Va.L.Rev.* 1671, 1681 (1992).

 Accordingly, when a federal court must make predictions about how the highest state court would decide a case in the absence of caselaw directly on point, conservatism is in order in relying on the practice of other jurisdictions, even in analogous cases. Lacking any inherent power to make state law such as a state court might have, through interpretation of state statutes or creation of common law rules, a federal court must be careful to avoid the temptation to impose upon a state what it, or other jurisdictions, might consider to be wise policy. That other jurisdictions favor a policy cannot weigh heavily in a federal court's determination in an unsettled area of a state's law if there is any significant indication that that state's own law either disfavors the policy in question directly or that promoting the policy would run afoul of established state standards of judicial interpretation or statutory construction. Persuasive policy arguments from other jurisdictions might weigh more heavily when nothing in a state's own law points clearly for or against the policy in question. Where a federal appeals court "lack[s] any sure basis for predicting what the [state] courts would do," it can decide "in the light of practical and policy considerations, the treatment of other similar rights in our legal system, the relative weight of the conflicting interests of the parties, and certain moral presuppositions. . . ." *Memphis Development Foundation v. Factors, Etc., Inc.*, 616 F.2d 956, 958 (6th Cir.1980). But fortunately here policy direction from Wisconsin law is available.

The cases cited by Lexington in support of the proposition that claims-made policies should not be subject to a notice-prejudice rule do not even address by analogy the situation involved in Wisconsin, where there is an unambiguous statute squarely on point. These cases involve general considerations of public policy, not statutory interpretation. In *Zuckerman*, the insured were evidently challenging the validity of claims-made policies "on grounds of public policy, arguing that limitation of the coverage of the policy defeats the reasonable expectations of the insured. . . ." *Zuckerman*, 495 A.2d at 401. The New Jersey Supreme Court found "no consideration of public policy that would inhibit our enforcement of the 'claims-made' policy. . . ." *Id.* at 404. In *Esmailzadeh*, the Eighth Circuit said that the insured plaintiffs in that case had "presented no convincing reason to disturb the District Court's assessment of Minnesota public policy," *Esmailzadeh*, 869 F.2d at 424–425, which that court held to favor the claims-made policy. The other foreign cases Lexington cites are similarly unsuitable for its purposes.

 Insofar as the case turns on state public policy, Wisconsin public policy is in fact quite different. There, "[i]t is not [a] court's function to decide what the law ought to be, but rather to construe and apply the law as the legislature has enacted it to the facts before us. It is the role of the legislature to evaluate the public policy considerations regarding the wisdom of a statute, just as it is its role to cure unfairness of a statute, if any." *Kenison*, 582 N.W.2d at 73 (internal citations omitted). Defendants argue that by enacting the notice statutes, the Wisconsin legislature has rendered unenforceable as a matter of public policy the kind of provisions that bar Lexington's liability in the present case. This argument is not adequately rebutted by plaintiff. We do not read the notice-prejudice statutes as banning all claim-made policies in Wisconsin. An insurer may choose to insure either the risk of the activity which causes the injury—here the negligent rendering of services—as with an occurrence policy, or to insure the risk of a claim being made based on the injury, as with a claims-made policy. What the insurer

may not do under any sort of policy, whether claims-made or occurrence, is to refuse liability for payment merely because of late notice. That is Wisconsin public policy as determined by the legislature. The foreign cases cited by plaintiff therefore do not give us reason to reject a literal application of the plain language of the statutes.

Lexington's second argument is based more promisingly on Wisconsin caselaw. Lexington cites *Rockline Inc. v. Wisconsin Physicians Services Ins.*, 175 Wis.2d 583, 499 N.W.2d 292 (Wis.Ct.App.1993),[3] where the state court held one of the notice-prejudice provisions at issue here, § 631.81, to be inapplicable to a "stop loss" insurance policy. That court said that "no contract of insurance should be rewritten by construction to bind an insurer to a risk which it did not contemplate and for which it was not compensated." *Id.* at 297. The district court here, Lexington argues, bound it to an unforeseen risk by applying the notice-prejudice rule to Policy 1. Lexington contemplated the lesser risk because its contract cut off liability thirty days after the expiration of the policy. The price Lexington charged R & K was predicated upon this understanding.

However, unlike Policy 1, a claims-made policy, the kind of policy involved in *Rockline*, a "stop-loss policy[, did] not require Rockline to submit notice and proof of loss to secure reimbursement." *Id.* Such requirements applied to a different agreement which Rockline had canceled, gambling—wrongly as it happened—that the excess insurance would not be required. Since no notice at all was required under the policy in *Rockline*, reasonably timely notice of the sort that is the subject of the notice-prejudice statute was not an issue. Lexington's policy in the present case, however, did contain notice provisions and was not canceled.

Finally, the *Rockline* court suggests in a footnote that with regard to a health benefits plan of the sort involved there, a state notice-prejudice statute like § 631.81 is "likely preempt[ed]" by the federal Employee Retirement Security Act, 29 U.S.C. § 1001 *et*

seq. ("ERISA"). *Rockline*, 499 N.W.2d at 298 n. 10. If so, this might well take an employee health benefits insurance policy out of the scope of the notice-prejudice rule, but it would not operate on an ordinary liability policy like that involved in the case before us. Lexington wisely does not argue that here the state statutes are preempted by ERISA.

Lexington complains, in connection with *Rockline* and throughout, that to impose liability upon it would force it to pay defendants for insurance it never agreed to provide without consideration. This worry is unavailing. Lexington should have known about the effect of the Wisconsin statute on the notice provisions of the policy at issue. As Justice Holmes remarked long ago, "One whose rights, such as they are, are subject to state restriction, cannot remove them from the power of the state by making a contract about them. The contract will carry with it the infirmity of the subject-matter." *Hudson County Water Co. v. McCarter*, 209 U.S. 349, 357, 28 S.Ct. 529, 531–532, 52 L.Ed. 828, *called into question on other grounds by Sporhase v. Nebraska ex rel. Douglas*, 458 U.S. 941, 102 S.Ct. 3456, 73 L.Ed.2d 1254. That Lexington had failed to apprise itself of the state and effect of Wisconsin law is unfortunate—for Lexington, anyway—but does not relieve Lexington of its statutory liability. Although it is not strictly true in all circumstances, the maxim, "Ignorance of the law is no excuse" applies here. *Cf. Lambert v. California*, 355 U.S. 225, 228, 78 S.Ct. 240, 243, 2 L.Ed.2d 228 (Maxim "is deep in our law.").

■ Given the application of the notice statutes to all liability insurance policies, plaintiff also loses as a matter of contract interpretation. Taking the contract on its face and leaving the notice statutes aside, as noted above, a different result would be reached. But we cannot leave the notice statutes aside. As this Court has previously recognized, *see Lopardo*, 97 F.3d at 927, the Wisconsin mandatory notice-prejudice provisions represent an additional term of every Wisconsin insurance contract by operation of

---

**3.** Lexington's reliance on *Kenefick v. Hitchcock*, 187 Wis.2d 218, 522 N.W.2d 261 (Wis.Ct.App. 1994), is misplaced. Although a claims-made

policy was at issue there, the notice-prejudice provisions were not, and so the case is not on point.

law. *See also Garcia v. Regent Ins. Co.*, 167 Wis.2d 287, 481 N.W.2d 660, 667 (Wis.Ct. App.1992). Therefore, as defendants argue, Policy 1, like every liability insurance policy in Wisconsin, contains as a matter of law the provision stated in Wis. Stat. § 632.26(1)(b). Policy 1 contained a notice-prejudice term implied in law. By the terms of the contract itself, therefore, Lexington remains liable unless it can show prejudice or unreasonable delay.

Lexington, however, curiously did not argue that the defendants' delay in submitting notice and proof of loss actually caused it prejudice. It would have been a far more promising approach to argue prejudice than to try to persuade us that "every" and "all" in a statute means "some, and not us." Lexington might have said that given the sort of policy a claims-made policy is, late notice is in itself prejudice. Or Lexington might have argued that the defendants did not provide notice as soon as "reasonably possible," as the notice-prejudice statute requires. However, the prejudice argument and the unreasonable delay argument were both waived because they were not timely raised. *See Giotis v. Apollo of the Ozarks, Inc.*, 800 F.2d 660, 664 (7th Cir.1986).

Since the Wisconsin notice-prejudice statute applies to every Wisconsin liability insurance policy unless specifically excepted, it applies to the policy at issue here. There being no specific exception, Lexington remains liable despite the late notice unless it was prejudiced. The prejudice claim having been waived, Lexington is therefore liable to R & K and Salt Lake City.

AFFIRMED.