**Oddmund GRUNDSTAD,**
**Plaintiff–Appellant,**

v.

**Joseph RITT, Defendant–Appellee.**

No. 98–1850.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 13, 1998.

Decided Jan. 25, 1999.

John R. Kelso (argued), Fowler, White, Burnett, Hurley, Banick & Strickroot, Miami, FL, for Plaintiff–Appellant.

Adam J. Levitt (argued), Miller, Faucher, Cafferty & Wexler, Chicago, IL, for Defendant–Appellee.

Before CUMMINGS, ROVNER, and DIANE P. WOOD, Circuit Judges.

CUMMINGS, Circuit Judge.

Oddmund Grundstad, a citizen of Norway, and Joseph Ritt, a citizen of Illinois, were partners along with a third man in a company called Atlantic Associates, Ltd. ("Atlantic"), a Cayman Islands company engaged in the business of operating gaming concessions on cruise ships. In 1981, Ritt decided to leave Atlantic in order to join Atlantic International Vending and Gaming, Ltd. ("International"), also a Cayman Islands company engaged in a similar line of business. At the time, Atlantic and International concluded a non-competition agreement (the "Agreement") whereby Atlantic would pay International a sum for each year in which International refrained from competition. The Agreement was to cover a period of thirteen years, from 1981 to 1994. Grundstad and his remaining partner in Atlantic, H. Joel Rahn, each gave a personal guaranty of Atlantic's obligations under the Agreement.

In 1983, International assigned its rights under the Agreement to defendant Ritt. From that point on, Atlantic made payment to Ritt individually. International was dissolved in 1987. Atlantic ceased to exist in 1991. With Atlantic's dissolution, all payments under the Agreement ceased. When the payments stopped, Ritt sought and obtained an arbitration award against Atlantic for Atlantic's past and future unpaid amounts totaling $844,382.55. Ritt converted this award into a judgment in the Superior Court for Hampden County, Commonwealth of Massachusetts. The judgment included the full amount of the award plus accrued interest. This case concerns Grundstad's liability

for this judgment based on his personal guaranty in the Agreement.

This is the second time this case has appeared before this Court. The first time, we reversed the district court's determination that the effect of the personal guaranty should be arbitrated pursuant to the standard arbitration clause in the Agreement. *Grundstad v. Ritt*, 106 F.3d 201 (7th Cir. 1997). On remand, the district court proceeded to the merits of the dispute and considered the two parties' cross-motions for summary judgment. Grundstad contended that the assignment to Ritt in 1983 voided the personal guaranty he made of Atlantic's obligation to pay. Ritt argued it had no such effect. The district court decided for Ritt, holding Grundstad liable under his personal guaranty for the Massachusetts judgment. Ritt was awarded $1,221,640.71, reflecting the Massachusetts judgment principal plus 12% statutory interest accrued since the judgment was entered. The question on appeal is whether the district court's grant of summary judgment was correct.

■ Our review of the district court's grant of summary judgment is de novo. *See Cozzie v. Metropolitan Life Ins.*, 140 F.3d 1104, 1107 (7th Cir.1998). We apply Illinois law to this diversity case because the governing substantive law is undisputed. "The operative rule is that when neither party raises a conflict of law issue in a diversity case, the federal court simply applies the law of the state in which the court sits." *Wood v. Mid–Valley, Inc.*, 942 F.2d 425, 426 (7th Cir.1991). We note that although Grundstad argued in his brief that Massachusetts law should govern, at oral argument he conceded that Illinois law should apply.

## I.

■ The general rule in Illinois is that " 'a guarantor is not liable for anything which he did not agree to and if the creditor and principal have entered into an agreement materially different from that contemplated by the instrument of guaranty, the guarantor shall be released.' " *Bernardi Brothers v. Great Lakes Distributing*, 712 F.2d 1205, 1207 (7th Cir.1983) (*quoting Claude Southern Corp. v. Henry's Drive–In*, 51 Ill.App.2d 289,

201 N.E.2d 127, 132 (Ill.App. 1 Dist.1964)). Illinois courts have not drawn a clear distinction between the effects of "special" and "general" guaranties. They look rather to whether there has been a material change in risk to the guarantor because of a modification undertaken by the principal debtor and the creditor. In considering whether an assignment relieves a guarantor of liability, Illinois looks to whether the assignment materially changes the risks to the guarantor. "Illinois recognizes the general rule of nonassignability of guaranties.... However, the Illinois courts have refused to apply the rule mechanically; rather they examine the factual setting of each case to determine whether the policy underlying the rule is applicable. The result is that the guarantor is not discharged unless the essentials of the original contract have been changed and the performance required of the principal is materially different from that first contemplated." *Essex International v. Clamage*, 440 F.2d 547, 550 (7th Cir.1971). Our task is to determine whether the assignment from International to Ritt imposed a material change of risk on Grundstad.

■ To determine whether there has been a material change in risk requires a sensitive inquiry into the risk attending the initial contract and whatever additional risks, if any, were created by the assignment. The risk to Grundstad on the initial contract was a function of two variables: (1) the likelihood of International not competing and (2) the likelihood of Atlantic defaulting on its obligation to pay. When International assigned the contract to Ritt, the second variable, the likelihood of Atlantic being unable to pay, was unchanged. Grundstad argues that the first variable, the likelihood of International not competing, did change. The assignment, Grundstad argues, changed *who* it was that would forbear from competing with Atlantic. After 1983, Grundstad contends, Atlantic paid Ritt to secure his non-competition, not International's, and the likelihood of Ritt not competing with Atlantic differed materially from the likelihood of International's non-competition.

■ We are unconvinced for two reasons. The first is that Grundstad presents no evidence that Ritt assumed International's obligation not to compete. Illinois follows the plain meaning rule in interpretation of contracts. See *Bourke v. Dun & Bradstreet*, 159 F.3d 1032, 1036 (7th Cir.1998); *Konewko v. Kidder, Peabody & Company*, 173 Ill.App.3d 939, 123 Ill.Dec. 617, 528 N.E.2d 1, 3 (1988) ("When interpreting a contract, we must determine the meaning of the provisions from the language, and we will not arrive at a construction of the contract which runs contrary to the plain and ordinary meaning of the language used."). The assignment simply provides that "[International] hereby assigns [the non-competition] Agreement between [International] and Atlantic to Joseph Ritt." Looking at the assignment's plain terms, we are at a loss to understand how it could be understood to assign International's obligation not to compete to Ritt.

■ In fact, even if the assignment purported by its plain language to transfer International's obligation not to compete to Ritt, such a transfer would have been ineffective under Illinois law because Atlantic was not a party to the assignment. Under Illinois law, all the parties to the original agreement must assent to a novation, that is, to the substitution of a new debt or obligation for a previous debt or obligation. Illinois courts have held that "[t]he essential elements of a novation are a previous, valid obligation; a subsequent agreement of all the parties to the new contract; the extinguishment of the old contract; and the validity of the new contract." *Faith v. Martoccio*, 21 Ill.App.3d 999, 316 N.E.2d 164, 167 (Ill.App. 2 Dist.1974). Hence, even if the assignment on its face sought to transfer International's duty not to compete, this transfer would have been ineffective without Atlantic's assent. Since the assignment only transferred International's right to receive payment, Grundstad's risk under the guaranty was unchanged.

■ Our second reason for concluding the assignment did not materially change Grundstad's risk is that even if we were to believe that the assignment transferred International's obligation not to compete to Ritt, we do not think Ritt's assumption of this obligation materially changed Grundstad's risk. The Agreement originated with Ritt's choosing to leave Atlantic to join International. The intent of the Agreement was clearly to prevent International from benefitting either from Ritt's expertise in cruise ship casino gaming or from the goodwill Ritt might bring to International based on his previous association with Atlantic. In addition to noncompetition, the Agreement also required Atlantic International Vending and Gaming, Ltd. to remove the word "Atlantic" from its corporate name so that International would not. "get the benefit or obtain the benefit of the good-will acquired by" Atlantic Associates.

The Agreement did not prevent Ritt from providing his experience to some third company to the detriment of Atlantic's casino business. If we were to believe Grundstad's interpretation of the 1983 assignment, the 1983 assignment relieved International of the duty not to compete with Atlantic and imposed this duty on Ritt personally. We fail to see how such a change would increase Grundstad's risk. If anything, the risk would decrease. Ritt's personal covenant not to compete would still bar International's use of Ritt's skills in casino gaming, though of course the party liable for breach of the Agreement would be Ritt and not International. In addition, Atlantic would be protected from Ritt's lending his casino gaming expertise to some third enterprise, a protection not offered by the original Agreement. Thus, even if we found the 1983 assignment to impose a personal obligation on Ritt not to compete in addition to the right to receive payment, we would still hold that Grundstad is not relieved of his duties under the personal guaranty.

## II.

■ Grundstad argues that when International dissolved, the Agreement between International and Atlantic failed for want of consideration and lack of contracting capacity. International dissolved in 1987, Grundstad argues, and was therefore unable to forbear from competing from that point on. This argument works only if the Agreement

was in fact a series of yearly covenants not to compete. If the Agreement was a year-to-year undertaking, International's dissolution in 1987 would deprive it of the ability to contract and to confer valuable consideration after that time. If, by contrast, the Agreement was a single contract calling for fourteen years of forbearance in exchange for yearly payments, the only time of contract formation would be in 1981 when International did exist and therefore had the capacity to enter into agreements and to confer valuable consideration.

 Grundstad does find some support for his argument in the fact that International could compete under the Agreement during a year if it was willing to forego Atlantic's payment for that year. Unfortunately for Grundstad, we do not write on a clean slate in deciding whether the Agreement was in fact a series of yearly covenants not to compete. The judgment Ritt seeks to enforce resulted from an arbitration in which the arbitrator held Atlantic to have an enforceable obligation to pay Ritt under the Agreement for the years 1991 to 1994. The arbitrator, empowered by the Agreement to interpret its terms, therefore decided that International's dissolution did not relieve Atlantic of its duty to pay. This conclusion is consonant with the fact Atlantic did continue to pay under the Agreement from 1987 to 1991. In any case, federal courts do not sit in review of an arbitrator's interpretation of a contract absent extraordinary circumstances. See, e.g., Generica Limited v. Pharmaceutical Basics, 125 F.3d 1123 (7th Cir.1997), 9 U.S.C. § 10 (setting out grounds for vacation of an arbitral award under the Federal Arbitration Act).

In guaranteeing Atlantic's performance under the Agreement Grundstad assumed the risks inherent in the Agreement. Since the Agreement made the interpretation of its terms subject to arbitration, one of the risks Grundstad undertook when guaranteeing the Agreement was that an arbitrator would understand the Agreement not to be a series of yearly covenants not to compete. Cf. FDIC v. Rayman, 117 F.3d 994, 999 (7th Cir.1997) (guarantor when he signed a guaranty using land as collateral assumed the risk that future owners would damage the collateral in some way). An arbitrator found the Agreement to create an enforceable obligation for Atlantic to pay. Grundstad guaranteed Atlantic's performance under the Agreement. Grundstad must make good on this guaranty.

### III.

 Grundstad offers a number of other arguments to contest his liability under the guaranty which require comparatively little discussion. He tells us that contracts of guaranty are to be strictly construed under Illinois law, citing Lawndale Steel Co. v. Appel, 98 Ill.App.3d 167, 53 Ill.Dec. 288, 423 N.E.2d 957 (1981), and Hensler v. Busey Bank, 231 Ill.App.3d 920, 173 Ill.Dec. 390, 596 N.E.2d 1269 (1992). The principle is valid, but the language in Hensler to which he refers shows us the principle does not help his claim. The Hensler court wrote: "A guarantor is to be accorded the benefit of any doubt which may arise from the language of the contract, and his liability is not to be varied or extended by construction or implication beyond its precise terms." Id. at 1274. There was no variation or extension of liability in this case.

Grundstad argues his guaranty was special (i.e., directed specifically at International) and hence necessarily unassignable. This argument ignores the fact, noted above, that Illinois does not recognize the rigid distinction between special and general guaranties.

 Grundstad alleges he had no notice of the arbitration proceeding, but this alleged lack of notice in no way modifies his liability under the guaranty. Grundstad unconditionally guaranteed "all of the provisions ... of the Agreement, ... especially the performance of Atlantic." He was an absolute (i.e., unconditional) guarantor of Atlantic's obligations under the Agreement. Illinois suretyship law is clear: an absolute guarantor is liable immediately upon default of the principal, without notice. See Roels v. Drew Industries, 240 Ill.App.3d 578, 181 Ill. Dec. 338, 608 N.E.2d 411, 415 (1992), Western National Bank v. Moenning, 224 Ill. App.3d 67, 166 Ill.Dec. 454, 586 N.E.2d 412, 417 (1991). Hence Grundstad is liable under

the guaranty whether he received notice of the arbitration or not.

Grundstad believes that Atlantic's dissolution relieves him of liability under the guaranty. He cites no law to support this unfortunate proposition, and for good reason. The purpose of obtaining a guaranty is precisely to protect oneself should the primary obligor default on payments.

When Atlantic defaulted on its obligation to pay, Ritt attempted collection for a year before commencing formal arbitration proceedings. Grundstad argues that Ritt's allowance of more time for International to pay relieves Grundstad of his obligations under the guaranty. In Illinois, the rule is that an extension *"may* discharge a guarantor from further liability under his guaranty." *Lee v. Pioneer State Bank,* 97 Ill.App.3d 97, 53 Ill.Dec. 26, 423 N.E.2d 218, 219 (1981) (emphasis added). However, "[f]or such a discharge to occur, *there must be a binding agreement between a creditor and a principal obligor*, entered into without a guarantor's knowledge, founded on valuable consideration, for an extension of time for a definite period, whereby the creditor cannot collect from the principal debtor until the extended time expires." *Id.* (emphasis added). There is no evidence whatsoever that there was an agreement between Ritt and Atlantic modifying International's payment obligations. Before commencing arbitration, Ritt pursued the sensible expedient of attempting collection. We cannot see how this should change Grundstad's obligations under the guaranty.

Perhaps recognizing the weakness of this last argument, Grundstad argues the reason he was unable to produce evidence of an agreement to modify the payment terms was that the district court improperly limited his discovery in failing to grant an extension of the discovery period under Fed.R.Civ.P. 56(f). These improper limitations, Grundstad contends, also limited his ability to develop his affirmative defenses.

At the outset, Grundstad's proffered defenses were nothing more than vague, conclusory attacks on the Agreement. Grundstad requested and received ninety days to develop some factual basis for these defenses and then did little except serve Ritt with a discovery request forty-five days into this period. At the close of the discovery period, Grundstad had still failed to develop any evidence which would support his defenses. Considering Grundstad's own dilatory actions, we do not believe the district court's limitations on discovery were an abuse of discretion. As we have said before, "[a] party who has been dilatory in discovery may not use Rule 56(f) to gain a continuance where he has made only vague assertions that further discovery would develop genuine issues of material fact." *United States v. Bob Stofer Oldsmobile–Cadillac,* 766 F.2d 1147, 1153 (7th Cir.1985).

Affirmed.