Joel BLAZ and Fran Blaz, Plaintiffs,

v.

**MICHAEL REESE HOSPITAL FOUNDATION d/b/a Michael Reese Hospital and Medical Center, and Arthur B. Schneider, M.D., Defendants.**

**No. 96 C 0091.**

United States District Court,
N.D. Illinois,
Eastern Division.

Dec. 22, 1999.

---

Martin H. Freeman, Barbara E. Hirsch, Freeman & Jenner, P.C., Rockville, MD, E. Cooper Brown, H.W. Cummins, Cummins & Brown, Takoma Park, MD, for Plaintiff.

Charles R. Krikorian, Welsh & Katz, Ltd., Chicago, IL, Jason Ayres Parson, William Andrew Rakoczy, Lord, Bissell & Brook, Chicago, IL, for Defendants.

## *MEMORANDUM OPINION AND ORDER*

BUCKLO, District Judge.

Joel Blaz, now a citizen of Florida, was one among about 5,000 patients at Michael Reese Hospital and Medical Center ("Michael Reese") in Chicago, Illinois, who were treated with X-ray therapy for some benign conditions of the head and neck from 1930 to 1960. Mr. Blaz received this treatment while a child in 1947–48. He has suffered various tumors that he now attributes to this treatment. In 1996, he sued Michael Reese and its successor, Galen Hospital, which acquired Michael Reese in 1991, and Dr. Arthur Schneider, the physician who headed Michael Reese's follow-up project that investigated the effect of the treatments. Mr. Blaz alleges that (1) the defendants negligently exposed him to harmful radiation or (2) tortiously failed to warn him of risks associated with the radiation therapy, committing fraud and fraudulent concealment in the process. I here consider the defendants' motions: (1) to dismiss Mr. Blaz's amended complaint based on failure to relate back, (2) for summary judgment based on charitable immunity, and (3) to strike or dismiss allegations of fraud and fraudulent concealment, and deny them all.

### I.

In a diversity case, I apply state substantive and federal procedural law. *Dawn Equip. Co. v. Micro–Trak Sys., Inc.,* 186 F.3d 981, 986 (7th Cir.1999) (*citing Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82

L.Ed. 1188 (1938)).[1] In a motion to dismiss under either Fed.R.Civ.P. 12(b)(6) or Rule 12(c), I accept the well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Gastineau v. Fleet Mortgage Corp.*, 137 F.3d 490, 493 (7th Cir.1998). Such motions "should not be granted unless it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." *Hentosh v. Herman M. Finch Univ. of Health Sciences/The Chicago Med. School*, 167 F.3d 1170, 1173 (7th Cir.1999) (*citing Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

The defendants move to dismiss Mr. Blaz's amended complaint because it fails to relate back to his original filings, and therefore falls outside the limitations period Mr. Blaz himself concedes is applicable.[2] For reasons that are unclear to me, the defendants argue in terms of a state rule of civil procedure governing the relation back of an amendment to a complaint.[3] This is puzzling because, as I have already stated, it has been established for over 60 years that, in federal court, one uses federal procedure. The parties are, needless to say, in federal court, and there is a federal rule on point governing the relation back of amendments to pleadings—Fed. R. Civ. P. 15(c).

■ When there is a federal rule on point, it governs if it is constitutional and properly enacted by Congress under 28 U.S.C. § 2072, the Rules Enabling Act. *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 346 (7th Cir.1997) (*citing Hanna v. Plumer*, 380 U.S. 460, 463, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965); *see also Burlington Northern R.R. v. Woods*, 480 U.S. 1, 5, 107 S.Ct. 967, 94 L.Ed.2d 1 (1987) (reaffirming the *Hanna* principle). There can be no real doubt that Rule 15(c) is constitutional and that Congress properly enacted it. *See Brown v. E.W. Bliss Co.*, 818 F.2d

1405, 1409 (8th Cir.1987); *Johansen v. E.I. Du Pont De Nemours & Co.*, 810 F.2d 1377, 1380 (5th Cir.1987). If, *per impossible*, there were some problem with Rule 15(c), the defendants did not raise it and so waive any challenge to the applicability of the federal rules. *Giotis v. Apollo of the Ozarks*, 800 F.2d 660, 664 (7th Cir.1986) (argument not raised is waived). The state procedural rules are simply inapplicable. Because the defendants rest their argument solely upon the state rules and offer no pertinent discussion based upon the federal rule that in fact governs, the defendants have waived their argument for the motion to dismiss for failure to relate back. *See United States v. Watson*, 189 F.3d 496, 500 (7th Cir.1999) (Arguments not adequately developed or supported are waived.).

■ Although I am obliged "to consider only those arguments presented to [me]," *Momient–El v. DeTella*, 118 F.3d 535, 540 (7th Cir.1997), if I were to analyze the motion under Rule 15(c), I would have to deny it. It is black letter law in the Seventh Circuit, not quite so old as the *Erie* rule, but fairly hoary nonetheless, that "an amendment changing a party's name will relate back where the party intended to be served, though misdescribed, was actually the party served." *Simmons v. Fenton*, 480 F.2d 133, 137 (7th Cir.1973). The Seventh Circuit there commented that while in Illinois the "statutes of limitations are frequently geared to the filing of a complaint. . . . Rule 15(c) is geared to notice. The party to be substituted must receive notice of the action 'within the period provided by law for commencing the action against him.'" *Id.* (internal citation omitted). That is the case here. Whatever name it went under, Michael Reese was on notice. The motion to dismiss is denied.

---

1. As will be seen, this reminder is unfortunately not mere boilerplate.

2. Mr. Blaz's original lawsuit, filed on January 4, 1999. named as a defendant "Galen Hospital of Illinois, Inc., d/b/a Michael Reese Hospital and Medical Center." On July 21, 1999, after Galen Hospital was dismissed from this action, he amended his complaint to substitute for Galen Hospital as defendant Michael Reese Hospital

Foundation, d/b/a Michael Reese Hospital and Medical Center. Galen Hospital bought Michael Reese in 1991 and Michael Reese took the foundation name that year.

3. Mr. Blaz also misses the applicability of the *Erie* rule to this motion, but, luckily for him, waiver operates first on the moving party.

## II.

Michael Reese moves for summary judgment on the grounds that it is entitled to absolute charitable immunity from suit for acts of its employees occurring prior to 1950. This would affect Mr. Blaz's Counts I (medical malpractice), II (lack of informed consent), III (negligence), and VII (loss of consortium), all based factually on Mr. Blaz's radiation treatments, which took place in 1947 and 1948. Summary judgment is to be granted when there is no material issue of fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Liu v. T & H Machine Inc.*, 191 F.3d 790, 794 (7th Cir.1999). In deciding a motion for summary judgment, I view the record and all reasonable inferences to be drawn from it in the light most favorable to the non-moving party. *Fulk v. United Transportation Union*, 160 F.3d 405, 407 (7th Cir.1998).

A federal court sitting in diversity must attempt to predict how the state supreme court would decide the issues presented here. *Lexington Ins. Co. v. Rugg & Knopp*, 165 F.3d 1087, 1090 (7th Cir.1999). I apply Illinois law because the governing substantive law is undisputed. *Grundstad v. Ritt*, 166 F.3d 867, 870 (7th Cir.1999). Michael Reese relies upon the Illinois case of *Parks v. Northwestern University*, 75 N.E. 991 (Ill. 1905), *overruled by Darling v. Charleston Comm. Mem. Hosp.*, 211 N.E.2d 253, 260 (Ill.1965), where the Illinois Supreme Court affirmed a trial court decision holding that a charitable institution could not be sued under respondeat superior.

Mr. Blaz argues that in *Moore v. Moyle*, 92 N.E.2d 81 (Ill.1950), the Illinois Supreme Court either stated that there never was any such rule or modified the doctrine in a way that should apply retrospectively to Mr. Blaz's therapy in 1947 and 1948. In *Moore*, the Illinois Supreme Court held that "the trust funds of charitable corporations are immune from liability for the torts of the corporation's employees and agents. Beyond that, the rule of respondent superior is in effect." 92 N.E.2d at 87. That Court explained that "[w]e do not feel we are ... overruling or changing the *Parks* case, but,

instead, are properly extending the rule there announced," *id.* at 86, because it is "apparent that the doctrine of the *Parks* case had for its sole object the protection of trust funds." *Id.* at 85 (*citing Marabia v. Mary Thompson Hosp.*, 140 N.E. 836 (Ill.1923) (affirming a judgment based on tort against a charitable institution)). The Illinois Supreme Court noted in *Moore* that it had never addressed whether nontrust funds of a charity were subject to the *Parks* immunity. *Id.* at 84, 86.

This argument shows that no retrospective application of *Moore* is necessary: the defendants have misread *Parks* to be broader than it was. They cite some intermediate court decisions from the first half of the century to the contrary, but I am not entitled to disregard the state supreme court's authoritative pronouncement, as the defendants encourage me to do. Where the state supreme court has not ruled on an issue, decisions of the state appellate courts control, *Lexington Ins. Co.*, 165 F.3d 1087 at 1090, but where "the highest court in the appropriate state" has ruled, its decisions are "binding on federal courts." *King v. Order of United Commercial Travelers of America*, 333 U.S. 153, 158, 68 S.Ct. 488, 92 L.Ed. 608 (1948)(*citing Erie R.R. Co.*, 304 U.S. at 78, 58 S.Ct. 817).

The defendants also cite some Illinois Supreme Court decisions, but the one they say "definitively answer[s] any remaining questions" in fact supports Mr. Blaz's construction. In *Hogan v. Chicago Lying–In Hosp.*, 166 N.E. 461 (Ill.1929), the Court invoked *Parks* immunity because "an admission of liability would result in a diversion of the trust funds of the institution," *id.* at 461–62, just as the *Moore* court said.

Moreover, even if a retrospective reading were necessary, it would be justified. In 1950, Illinois law would not be construed to have retrospective application unless the language required it. *See Theodosis v. Keeshin Motor Express Co.*, 341 Ill.App. 8, 92 N.E.2d 794, 795–98 (1950)(statutory retrospectivity) (*citing* Bracton, Coke, Justice Story, and Chancellor Kent). Here the language requires it: what else could be the import of stating that there was no other object to *Parks* than the protection of chari-

table trust funds? I deny summary judgment on the charitable immunity theory.

## III.

The defendants move to strike Mr. Blaz's allegations of fraud and fraudulent concealment because they claim that these (1) are not pleaded with particularity, as required by Fed.R.Civ.P. 9(b), or (2) fail to state a claim upon which relief can be granted under Rule 12(b)(c). A motion to strike may be granted or denied within the sound discretion of the district court, see *Maldonado v. U.S. Bank,* 186 F.3d 759, 768 (7th Cir.1999); I have already adumbrated the standards for a Rule 12(b)(6) motion.

The fraud alleged here took place against the background explained in *Blaz v. Michael Reese Hosp. Found.,* 74 F.Supp.2d 803 at 804–05 (N.D.Ill.1999). In 1974, Michael Reese set up a Thyroid Follow–Up Project (the "Program") to gather data and conduct research among the people who had been subjected to the x-ray therapy. In 1975, Michael Reese wrote to Mr. Blaz, and in 1976, someone associated with the Program notified Mr. Blaz by phone, both communications stating that he was at increased risk of developing thyroid tumors because of the treatment. In 1979, Dr. Schneider, the head of the Program, and Michael Reese submitted a research proposal to the National Institutes for Health ("NIH") stating that a study based on the Program showed "strong evidence" of a connection between x-ray treatments of the sort administered to Blaz and various sorts of tumors, thyroid, neural, and other. In 1981, Dr. Schneider sent Mr. Blaz a questionnaire the purpose of which, according to an accompanying letter, was to "investigate the long term health implications" of childhood radiation treatments and to "determine the possible associated risks." It did not say anything about "strong evidence" of a connection between the treatments and any tumors. The allegations of fraud boil down to the claim that in the phone call, letter, and other communications, Michael Reese concealed facts of which it was aware about the risks to which it had subjected Mr. Blaz.

■ The defendants argue that Mr. Blaz fails to satisfy the Rule 9(b) requirement that fraud must be pleaded with particularity because he did not ascertain the identity of the 1976 caller from Michael Reese by name. The defendants offer an unhelpful string cite, not a single case of which stands for the proposition that a fraud claim fails as a matter of law unless the actual name of the person who perpetrates it is provided. Indeed, the idea is absurd, because, under it, a con artist could always avoid being sued for fraud by simply giving a false name—something fraudsters are particularly likely to do. The Seventh Circuit has not adopted any such fraudster-friendly rule. Rather, as it explains in one of the cases cited by the defendants, to plead fraud with particularity, "the plaintiff must plead the 'who, what, when, and where' of the alleged fraud." *Uni*Quality v. Infotronx, Inc.,* 974 F.2d 918, 923 (7th Cir.1992). Here, the institutional identity of the caller, *viz.* that she was from Michael Reese, is what matters. Michael Reese and not she is a defendant in this case, and there is no question but that she was acting for Michael Reese. Because Mr. Blaz has pled the "who" (Michael Reese), and the other elements are not in dispute, and are in any case satisfied, he has met the requirement of Rule 9(b).

The defendants also ask that I dismiss Mr. Blaz's fraudulent concealment claim because, they say, Dr. Schneider's letter does not contain any statement that Mr. Blaz alleges to be false. Even supposing that Dr. Schneider's letter were squeaky clean, I might stop there, since Mr. Blaz's fraudulent concealment claim would appear to rest as well upon the facts he alleges about the earlier communications from Michael Reese (the 1975 letter and the 1976 phone call) as well as the letter from Dr. Schneider, and the defendants neglect to argue that those communications were innocent, thereby waiving any argument that they are innocent for purposes of this motion. I would not dismiss a cause of action for failure to state a claim merely because one among several of its evidentiary supports failed. For the purposes of a motion to dismiss I must assume that Mr. Blaz could show that the 1975 letter and the 1976 phone call involved fraudulent

concealment, whatever Dr. Schneider's letter involved.

In any event, the defendants do not show that the Schneider letter would not constitute fraudulent concealment under Illinois law. They argue that silence is not fraudulent concealment, and the most Dr. Schneider's letter did was to be silent about the risks to which Michael Reese had exposed Mr. Blaz. "[T]o state a cause of action for fraudulent concealment ... plaintiffs must allege that defendants concealed a material fact when they were under a duty to disclose that fact to plaintiffs." *Hirsch v. Feuer*, 234 Ill.Dec. 99, 702 N.E.2d 265, 273 (1998); *Connick v. Suzuki Motor Co., Ltd.*, 221 Ill.Dec. 389, 675 N.E.2d 584, 593 (Ill.1996). I have held that Dr. Schneider had a duty under Illinois law to disclose the risks to Mr. Blaz and that Michael Reese had a duty to require Dr. Schneider to make this disclosure. *See Blaz*, 74 F.Supp.2d at 806. Mere silence in a transaction does not amount to fraud, it is true. *Hirsch*, 234 Ill.Dec. 99, 702 N.E.2d at 273. But "silence accompanied by deceptive conduct or suppression of material facts ... can give rise to concealment and 'it is then the duty of the party which has concealed information to speak.'" *Id.*

Dr. Schneider's failure to disclose in his letter to Mr. Blaz what he had told the NIH about the strong connection between radiation therapy of the sort received by Mr. Blaz and various sorts of tumors might well be suppression of material facts, and therefore actionable as fraudulent concealment. The defendants have not shown that there is no set of facts under which Mr. Blaz could recover for fraud or fraudulent concealment, and therefore their motion to dismiss these claims is denied.

### IV.

I DENY the defendants' motions (1) to dismiss Mr. Blaz's amended complaint based on failure to relate back, (2) for summary judgment based on charitable immunity, and (3) to strike or dismiss allegations of fraud and fraudulent concealment.