In the
United States Court of Appeals
For the Seventh Circuit

No. 00-2233

RAY HUTSON CHEVROLET, INCORPORATED,

Plaintiff-Appellant,

v.

GENERAL MOTORS CORPORATION,

Defendant-Appellee.

Appeal from the United States District Court
for the Western District of Wisconsin
No. 99-C-518-S--John C. Shabaz, Chief Judge.

Argued October 24, 2000--Decided December 18,
2000

   Before FLAUM, Chief Judge, and MANION and
EVANS, Circuit Judges.

   EVANS, Circuit Judge.  This case, brought
under our diversity jurisdiction,
requires us to interpret a provision of
the Wisconsin Automobile Dealership Law,
sec. 218.01 Wis. Stat. The district judge
granted the motion of the General Motors
Corporation to dismiss the statutory
claims on the basis of language in the
1993 revisions to the law, which he read
to grant GM broad immunity from suit.
Ultimately he dismissed all the claims,
including common law claims, on the basis
of the immunity provision. On this
unsettled question of Wisconsin law we
must surmise how the Wisconsin Supreme
Court would likely interpret the statute.

   Since 1953 Ray Hutson Chevrolet has been
a licensed Chevrolet dealership in
LaCrosse, Wisconsin. In 1966 Hutson built
new dealership facilities in accordance
with GM's facility space guidelines.
These facilities have proven to be larger
than required to handle the dealership's
service business. In 1985 Hutson obtained
GM approval to add Nissan service to the
service facility. Though it serviced
Nissans in the GM service facility,

Hutson sold Nissans out of a separate building because GM does not allow sales of cars other than GM cars out of GM dealerships. Even after Nissan service was added, the service facility was too large for the business.

In the spring of 1999 Hutson accepted an offer from the United States distributor for Kia vehicles, Kia Motors America, Inc., to open a Kia franchise at the Hutson dealership. The plan was to sell Kias out of the Nissan facility but to add Kia to the GM service and parts facility, which GM and Nissan were already sharing.

Under the dealership agreement with GM, Hutson was required to notify GM of these plans. It did that and furnished all the information GM requested for its evaluation of the proposal. GM rejected the proposal on May 24, 2000, citing "performance standards." One was the GM facility standard, which refers to its policy of not selling competing brands from its GM sales facilities. But Hutson claims it was not going to sell Kias out of the GM sales facility and GM had recently approved a plan similar to Hutson's for another dealership. GM also cited customer satisfaction standards, which it says were low and Hutson says were fine when compared to similar dealerships. With regard to working capital standards, which GM also cited, Hutson agreed to raise its working capital.

As a result of GM's refusal to approve the Hutson proposal, Kia withdrew its franchise offer and Hutson says it lost an opportunity to increase net profits by several hundred thousand dollars. This case followed. The district judge granted a motion to dismiss and a motion for summary judgment for GM, both of which depend on the interpretation of a Wisconsin statute. Our review of those decisions is de novo. Lexington Ins. Co. v. Rugg & Knopp, Inc., 165 F.3d 1087 (7th Cir. 1999). Because the issue involves an unsettled issue of Wisconsin law, we must determine what the Wisconsin Supreme Court would have to say about it.

In 1937 Wisconsin enacted the Wisconsin Automobile Dealership Law; its purpose was to protect dealers from manufacturers. Forest Home Dodge, Inc. v.

Karns, 29 Wis. 2d 78 (1965). The law was revised in 1993. The 1993 revisions are at issue here.

The 1993 revisions created sec. 218.01(3x), which set out procedures for challenging a manufacturer's refusal to allow a change in ownership, management, or location of a dealership and, as relevant here, to add another franchise to an existing facility. It provided that if the grantor does not approve the dealer's request, it must provide a written statement, within 30 days, of its reasons for disapproval. Failure to file the statement results in approval. A dealership which is served with a written statement disapproving its proposal may file a complaint with the Wisconsin Department of Transportation and ask for a determination of whether there is good cause for permitting the proposed action. The Office of the Commissioner of Transportation must promptly schedule a hearing and decide the matter. Factors which the commissioner should consider are set out in the statute.

Subsection (3x) also has a qualified immunity provision which provides:

The reasons given for the disapproval or any explanation of those reasons by the manufacturer . . . shall not subject the manufacturer . . . to any civil liability unless the reasons given or explanations made are malicious and published with the sole intent to cause harm to the dealer . . . .

Hutson says the qualified immunity provision shields the manufacturer only from defamation claims which might arise out of the requirement that the manufacturer give reasons for the denial of the request; GM says it provides qualified immunity as to any cause of action for damages arising out of its disapproval of a proposed dealership change. It was the latter interpretation which carried the day with the district court.

The language of the immunity provision, like a lot of legislative enactments, is not as clear as crystal. Hutson's reading of the statute requires that we imply that the legislature meant that the "publication of the reasons," rather than simply the reasons themselves, shall not

subject the manufacturer to liability. On the other hand, if, as GM contends, the legislature had intended to provide a broad grant of immunity, it could easily have done so more clearly.

Before we try our hand at making sense out of these provisions, we need to look at other relevant provisions of the law. Section 218.01(9), provides a civil cause of action for various violations of the law: "Without exhausting any administrative remedy available under an agreement or this section, except as provided in sub. (3)(f) and (fm), a licensee may recover damages in a court of competent jurisdiction for pecuniary loss" and costs and attorney fees if the loss is caused by certain violations, including two which are relevant to our analysis. One is "[b]eing a manufacturer . . . who fails to comply with the procedures in sub. (3x) regarding a dealer's request for approval of . . . adding another franchise at the same location as its existing franchise . . . ." Section 218.01(3)(a)24. Another covers violations of subsection (3)(a)22, which in turn refers to section 219.01(2g), which requires that performance standards by which dealership performance is measured must be "fair, reasonable and equitable."

Hutson brought its lawsuit based on violations of subsection (3)(a)22, requiring fair performance standards, and (3)(a)11, forbidding unconscionable practices, rather than subsection (3)(1)24, regarding failure to comply with the procedures for evaluation of a request to add a franchise.

Even though there is considerable incongruity in saying that, without exhausting administrative remedies, a dealer can bring a suit for damages if a manufacturer fails to comply with administrative procedures, it appears that the parties agree that a suit based on subsection (3)(a)24 can only be brought based on a manufacturer's failure to do just that. We surmise that the reason Hutson brought its suit for damages for violations of subsections (3)(a)22 and (3)(a)11, rather than for violations of subsection (3)(a)24, is that GM had not refused to comply with administrative procedures; in fact, Hutson had never instituted

administrative procedures.

But the parties disagree about whether, in a situation such as the one here, subsection (3)(a)24 is an exclusive remedy. That is, if the dispute involves a refusal to approve a proposal to add a franchise to the dealership, does subsection (3)(a)24, which specifically covers that situation, occupy the field? Or, in a situation such as exists between Hutson and GM in which the manufacturer cites the dealership's failure to meet performance standards as the reason for the refusal to approve the proposal, can the dealership also rely on the subsections of the statute concerning the unfair application of the performance standards?

Looking at the entire scheme, it seems likely to us that the purpose of subsection (3x) was to establish an administrative procedure to deal with requests to add franchises (and to change ownership, management, or location of a dealership). The commissioner of the Department of Transportation is given authority to evaluate rejections of these requests and administrative review of the commissioner's decision is provided. If the manufacturer does not comply with the administrative procedures, then the dealer can file a civil action based on that noncompliance. It is a comprehensive scheme for dealing with changes to the dealership; it does not apply directly to the existing franchise itself. To put responsibility for evaluating this kind of change to an existing franchise in the hands of the department has some logical appeal. After all, it seems clear that the dealership's interest in its existing franchise is different in kind from its interest in obtaining a new franchise. The integrated nature of the scheme leads us to conclude that subsection (3x) provides an exclusive procedure for evaluating a manufacturer's rejection of a proposal such as the one here. If the statute did not provide for an exclusive procedure, then it seems likely that very often, as here, the entire administrative scheme could be ignored and a dealer could head straight to court, seeking damages based on the rejection of its proposal, thus reading the administrative procedures out of the statute.

It follows that the civil remedy provided in subsection (24) is exclusive

even if the rejection of the proposal is based, as it is here, on performance standards. We see a difference between reliance on the imposition of performance standards on a dealership for purposes of enforcing or perhaps terminating the existing franchise agreement, and areference to performance standards as a reason for the rejection of the addition of another franchise to an existing dealership. The manufacturer could be saying, as in fact GM seemed to be saying here, that the dealership's performance is acceptable but not good enough to allow the addition of another franchise. In fact, GM specifically said in its letter rejecting the proposal that it was "concerned that the addition of Kia would further dilute your focus on Chevrolet." We do not read the letter to say that the existing franchise is in immediate jeopardy.

The immunity provision fits into this scheme. Subsection (3x) says, in part, that the reasons given for disapproving a proposal "shall not subject the manufacturer . . . to any civil liability" unless the reasons or explanations are malicious and published with the "sole intent to cause harm to the dealer . . . ." It is reasonable to read that provision as an attempt to ensure that (3x) remains the exclusive mechanism for resolving disputes like this one between Hutson and GM. If, as we conclude, the legislature meant for disputes regarding the addition of franchises or changes to existing franchises to be resolved through the Department of Transportation, it follows that the immunity provision is intended to prevent end-runs around the statutory scheme. In the absence of the immunity provision, it seems likely that, rather than using the administrative procedures set out in the statute, at least some dealers would file a miscellany of civil claims. In short, they would do what Hutson has done here. On the other hand, if the immunity provision provides manufacturers with a broad immunity from suit so long as they have not acted with malice, it is consistent with the other provisions of the statute. It completes the circle. Our conclusion is that, in fact, the statute provides manufacturers with such immunity and bars this civil suit.

Accordingly, the judgment of the district court is

AFFIRMED.